**LAW OFFICES OF RICHARD HAMLISH**
**910 HAMPSHIRE ROAD, SUITE G**
**WESTLAKE VILLAGE, CALIFORNIA 91361-1407**
**Telephone: (805)497-6632**
**FAX: (805)497-2703**
**SBN 122389**

Attorney for Plaintiffs
Fresno Rock Taco, LLC
Zone Sports Center, LLC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**FOR DISTRICT OF FRESNO**

| | |
|---|---|
| FRESNO ROCK TACO, LLC., a California limited liability company; Plaintiffs, v. NATIONAL SURETY CORPORATION, a Fireman's Fund Company; Defendant. | CASE NO. 11-CV-00845 LJO BAM<br><br>HON. LAWRENCE J. O'NEIL<br>UNITED STATES DISTRICT JUDGE<br><br>AMENDED COMPLAINT FOR BREACH OF AN INSURANCE CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; WRONGFUL REFUSAL TO PAY INSURANCE CLAIM<br><br>DEMAND FOR JURY TRIAL |

NOW COMES FRESNO ROCK TACO, LLC., a California limited liability company and ZONE SPORTS CENTER, LLC who alleges as follows:

**JURISDICTION**

1. The venue is proper in that Plaintiffs do business in the County of Fresno, State of California and Defendant is an insurance carrier who wrote a contract of insurance insuring certain assets of Plaintiffs that were located in the County of Fresno, State of California. The insurance contracts are Policy No. MZX 808944451 and AZC 80831958. The policy limits are in excess of the amount claimed and the jurisdictional amount.

## PARTIES

2. FRESNO ROCK TACO, LLC(hereinafter "FRT") is and was, at all times relevant to this action, a California limited liability company doing business in the County of Fresno, State of California.

3 ZONE SPORTS CENTER, LLC(hereinafter "ZSC") is and was, at all times relevant to this action, a California limited liability company doing business in the County of Fresno, State of California.

4. National Surety Corporation, a Fireman's Fund Company (hereinafter "National Surety") is an insurance company licensed to do business in the State of California and who does business in the County of Fresno, California.

## SUMMARY OF MATERIAL FACTS

5. ZSC is the owner of a real estate project named Granite Park which leased property to FRT and the Fine Irishman among other businesses.

6. FRT was a restaurant/night club that did business as Cabo Wabo Cantina and Memphis Blues (hereinafter "Cantina") and was a lessee of property from ZSC in Granite Park.

7. The business opened to the public on or about September 1, 2008 and closed on or about January 12, 2009.

8. At numerous times prior to September 1, 2008, FRT purchased certain electronic equipment to be used in the Cantina in an amount exceeding four hundred thousand ($400,000.00) dollars from California Music Express.

9. Although California Music Express had no legal right to any of the equipment, on or about December 17, 2008, California Music Express removed

certain items from the Cantina. Barbis did not know what equipment removed by California Music Express because it was removed from the Disk Jockey's room and Barbis had no reason to enter than room.

10. On or about January 28, 2009, the maintenance person noticed a group of persons stealing some speakers that were mounted on the outside of the Cantina. He chased them but they evaded him and escaped.

11. At some time after January 12, 2009 but before February 5, 2009, Milton Barbis was informed by the maintenance person that the front doors of the Cantina had been damaged and it appeared that the Cantina had been a victim of a robbery.

12. At some time after January 12, 2009 but before February 5, 2009, unknown persons entered the Cantina and stole many items of electronic equipment. It was believed that the missing electronic equipment included but was not limited to HD televisions, speakers, sound mixers, etc.

13. After a brief inspection of the premises, Barbis contacted his insurance agent, Chris Gutilla of DiBuduo & DeFendis, to inform him of the loss. Gutilla informed Barbis that Fireman's Fund/National Surety requires that the insured report the theft to the police and get a police report case number.

14. On or about February 5, 2009, either Barbis or the maintenance person, called the Fresno Police Department to report the theft. The only reason the police were called was that Barbis was told that a police report was needed to submit the claim to the insurance carrier.

15. On or about February 5, 2009, a community service person, not a police officer, allegedly contacted and interviewed Barbis either via telephone or in person, for less than five minutes and wrote a report. The community service person finalized his report on February 6, 2011.

16. Barbis has no recollection of speaking with anyone from the Fresno Police Department and never received a copy of a report. . There is no record as to when, if ever, the Fresno Police Department delivered a copy of the report to Barbis or FRT or ZSC.

17. The community service person did not inspect the premises to determine how entrance was gained to the Cantina nor did he inspect the premises to verify what items were stolen. It is unknown to Plaintiffs whether the community service person ever visited the Cantina in person where the theft took place.

18. On or about February 14, 2009, Barbis emailed the Fresno Police Department report number to Chris Gutilla.

19. On or about February 15, 2009, Chris Gutilla caused the claim to be submitted to the insurance carrier, Fireman's Fund.

20. On or about March 30, 2009, Barbis, while in the offices of Gutilla, executed a "Sworn Statement in Proof of Loss" which had been prepared by Fireman's Fund.

21. On that "Sworn Statement in Proof of Loss," all portions filled in by computer were filled in by the insurance carrier including that date of loss. On that "Sworn Statement in Proof of Loss," all portions filled in by handwriting was filled in by Barbis with the help and guidance of Gutilla and his staff..

22. On that same day, Barbis inquired as to the loss of income portion of the claims on those same policies.

23. Defendant National Surety requested a complete list of the items stolen along with the replacement cost or present value.

24. To comply with the request in Paragraph 23 above, Barbis provided HPL with a list of all of the equipment that California Music Express had

delivered to the Cantina. HPL then compared that list to the equipment still on the premises. HPL was not informed that California Music Express had removed certain items and inadvertently included those items removed by California Music Express on the list of missing items.

25. At his Examination Under Oath, Barbis acknowledged that HPL had possibly and inadvertently included items on the missing list that California Music Express has removed from FRT in December 17, 2008. FRT agreed to submit an amended Proof of Loss which would comport to the new information and Defendant's counsel agreed it was an error by HPL.

26 Although Fireman's Fund/National Surety had been supplied with a list of items which law enforcement has recovered and was in law enforcement's possession, on February 4, 2010, Fireman's Fund/National Surety denied the claim. The denial of the claim was based on eight factors (see Exhibit 1, Page 12-13).

a. According to the Fresno Police Report, Mr. Barbis made a statement to the reporting officer Michael Buchbinder. Mr. Barbis testified during his EUO that he did not recall ever speaking to Officer Buchbinder. [Whether or not Barbis remembers speaking to Buchbinder is not an essential inconsistency as to the validity of the claims.

b. According to the Fresno Police Department, Mr. Barbis advised Officer Buchbinder that the alarm on the building did not work; Mr. Barbis testified during his EUO that he did not recall whether the security system was working at the time of the theft. [Whether or not Barbis remembers whether the alarm system was working at the time of the theft is not a material inconsistency as to the validity of the claims.]

c. Mr. Barbis testified during his EUO that someone has taken a "big sledgehammer or something to the towers doors, because they were dented dramatically and bent." The Fresno Police Report contains no mention of the damage to the towers doors, instead focusing on the front wooden doors that would open when "jiggled." [Whether or not the police report mentions damage to certain property and not to other property is not a material inconsistency as to the validity of the claims.

d. According to the Sworn Statement in the Proof of Loss, the alleged theft occurred on February 15, 2009. Mr. Barbis reported the theft to the Fresno police on February 5, 2009. [It is clear that the theft was reported to the police on February 5, 2009 and reported to their insurance carrier on February 15, 2009. [This inconsistency is not material as to the validity of the claims.]

e. According to the Sworn Statement in the Proof of Loss, no other person had any interest or encumbrances on the subject business personal property; Defendant stated the proof of loss failed to disclose the financial interest of either Paul Binder or Omni Financial in the subject equipment. [This is not an inconsistency; There was no encumbrances.]

f. As indicated above, the Sworn Statement in Proof of Loss for $139,172.28 included equipment that had been repossessed by Paul Binder in December 2008. [This inconsistency is explained below]

g. The damage to the interior of the Cabo Wabo Cantina appears to have resulted from the repossession and/or removal of the equipment in December 2008 rather than an purported theft. [This inconsistency does not exist, It was based on false observations and assumptions.]

h. According to the DOI Affidavit, based on interviews with a former restaurant employee and former construction supervisor, some of the televisions included in the Claims were actually given by Mr. Barbis to workers for painting work performed at the closed restaurant. [This inconsistency is based on unverified false statements by disgruntled ex-employees who denied ever making said statements.]

27. None of the eight factors enumerated by Defendant has any merit and each has been shown to be based on false statements or errors. Defendant knew that the Fresno Police Department had recovered some of the stolen merchandise and had that merchandise in its possession. Any differences between what Barbis allegedly told the Fresno Police and/or his insurance agent and his testimony during his EUO, are insignificant and not material to the claims.

28. Defendant was provided with the explanations for each of the above prior to the denial letter and Defendant knew or should have known there is no legal basis for the denial.

29. The explanations provided were:

a. The reason Mr. Barbis stated and still maintains that he has no recollection of talking with a Fresno police officer is that he never spoke with a Fresno police officer. Michael Buchbinder is not a police officer; he is a community service person. Barbis has a vague recollection of someone contacting him on the telephone asking questions about the theft.

b. Mr. Barbis has no recollection as to whether the alarm system was working or not. The alarm company does not believe it was working because it had been shut off for non-payment;

c. There is no question that the doors were damaged. The reason the police report does not contain any mention of the doors is that the community service person never inspected the premises and never saw the doors.

d. The date of the losses on the Sworn Statement of Proof of Loss were printed on the document by Defendant Fireman's Fund not Plaintiff. If there was a mistake as to the date, Defendant is a fault because it prepared the document. The claims were reported to Fireman's Fund on February 15, 2009; the date of losses is unknown.

e. Neither Paul Binder or Omni Financial had any financial interest in any equipment that was the subject of the theft. Defendant is mistaken and it will be interesting to learn who supplied said information that either had any encumbrance on any particular equipment.

f. The equipment taken by Paul Binder on December 17, 2008 that was listed as stolen, was removed from the claim after a discussion at the Barbis' EUO.

g. The damage to the interior of the Cantina was caused by the thieves who perpetrated the theft. There is no evidence to the contrary. Defendant's conclusion were merely opinion without foundation.

h. No television was ever given to any painter or anyone else in exchange for work done or for any other reason. The former restaurant employee testified under oath that he was told by the former constructor worker that Mr. Barbis had given several televisions to painters. The restaurant employee had no first hand knowledge of that allegation. In addition. under penalty of perjury,

the construction worker denied he ever said that. Defendant never interviewed either the former restaurant employee or the construction worker or the painting contractor to verify the statements. The painting contractor stated under oath that he did not receive anything except money for his work.

30. The alleged inconsistencies and misrepresentations were never verified by Defendant. Defendant, absent any verified evidence and without any investigation, denied Plaintiffs' claims.

FIRST CAUSE OF ACTION

[Refusal To Pay An Insurance Claim]

Fresno Rock Taco, LLC & Zone Sports Center, LLC

31. Plaintiffs refer to and replead each and every allegation contained in paragraphs 1 through 30 and each of them inclusively and by this reference incorporates the same herein and makes each a part thereof.

32. On or about April 14, 2009, Plaintiffs filed claims in the amount of $139,172.28 plus loss of income.

33. Without good cause and knowing that law enforcement had recovered some of the stolen items, Defendant refused to pay the claims.

34. As a proximate cause of the aforementioned acts and omissions of defendant, and by reason thereof, Plaintiffs seeks damages from Defendant in the amount of $139,172.28 plus loss of income plus interest.

35. The aforementioned acts and omissions of defendant was done by defendant knowingly, intentionally and maliciously for the purpose of inflicting mental pain, oppression and emotional distress upon plaintiff, and in reckless,

wanton and callous disregard of plaintiff's well-being, security and civil rights; and by reason thereof, plaintiff claims exemplary and punitive damages from defendant in an amount according to proof.

36. By reason of the aforementioned acts and omissions of defendant, plaintiff was required to and did retain an attorney to institute and prosecute the within action, and to render legal assistance to plaintiff that he might vindicate the loss and impairment of his aforementioned rights; and by reason thereof, plaintiff request payment by defendant of reasonable attorney's fees.

## SECOND CAUSE OF ACTION

**[Breach of Contract]**

Fresno Rock Taco, LLC & Zone Sports Center, LLC

37. Plaintiffs refer to and replead each and every allegation contained in paragraphs 1 through 36 and each of them inclusively and by this reference incorporates the same herein and makes each a part thereof.

38. On August 15, 2008, Plaintiffs entered into written contracts with defendant.[MZX 808944451 AND AZC 80831958. The Contracts expired on August 15, 2009.

39. On of the terms and conditions of the contract were that Plaintiff would pay the charged premium and Defendant would pay any legitimate claims that Plaintiff filed.

40. Plaintiffs paid the premium required by the policies.

41. Plaintiffs reported a theft to the DiBudduo & Defendis [agent for Defendant] on or about February 5, 2009.

42. Plaintiffs were instructed by the agent to report the loss to the police and get a report number.

43. After receiving a report number from the Fresno Police, Plaintiffs filed the claims on February 15, 2009 in an amount of $139,172.28 plus claims for loss of income.

44. In spite of the fact that on or about June 6, 2009, law enforcement recovered some of the stolen items, Defendant breached the contracts when it refused to pay the claims without legal cause.

45. As a proximate cause of the aforementioned acts and omissions of defendant, and by reason thereof, Plaintiffs seek damages from Defendant in the amount according to proof.

46. By reason of the aforementioned acts and omissions of defendant, plaintiffs were required to and did retain an attorney to institute and prosecute the within action, and to render legal assistance to plaintiff that he might vindicate the loss and impairment of his aforementioned rights; and by reason thereof, plaintiff request payment by defendant of reasonable attorney's fees.

## THIRD CAUSE OF ACTION

[Breach of the Covenant of Good Faith and Fair Dealing]

Fresno Rock Taco, LLC & Zone Sports Center, LLC

47. Plaintiff refers to and repleads each and every allegation contained in paragraphs 1 through 46 and each of them inclusively and by this reference incorporates the same herein and makes each a part thereof.

48. One of the essential terms and conditions of every contract is the covenant of good faith and fair dealing. Every party to a contract has a duty and

is required to act in good faith and to deal fairly with all other parties to the contract.

49. When Defendant declined to pay the claims without verifying whether any of the statements and representations in the Department of Insurance and the Statement of Probable Cause were true or false, Defendant failed to act in good faith and deal fairly with Plaintiffs when it:

a. It did not investigate to discover the actual facts as to any alleged conversation between community service person Michael Buchbinder and Milton Barbis;

b. It failed to investigate as to whether the alarm system at the Cantina was in good working order or not;

c. It failed to investigate and inspect the damage to the doors at Cantina;

d. It failed to investigate to ascertain the actual date of loss and the actual date of the report of loss;

e. It failed to investigate as to whether there was any encumbrances on any of the property reported stolen. If it had made that investigation, it would have learned that there were no encumbrances on any of the property reported stolen.

f. It failed to investigate as to whether any of the property that was reported stolen was repossessed by Paul Binder. If it had made said investigation, it would have learned, as Plaintiff learned that the property repossessed by Paul Binder was inadvertently put on the list of reported stolen by a third party.

g. Without any evidence whatsoever, Defendant concluded that Plaintiff owed Paul Binder some unknown amount of money

where in fact, Plaintiff owed Paul Binder nothing. Paul Binder failed to file a mechanic's lien or a UCC lien on any equipment and therefore lost all claim on any equipment delivered to Plaintiff. The property which Paul Binder removed was a good faith effort by Plaintiff to reduce Binder's losses due to Binder's own negligence in not filing any liens.

h. Defendant failed to investigate as the nature of the damage to the interior of the property. Had it done said investigation, it would have learned that the damage to the property was caused by the thieves who stole the electronic equipment.

i. Defendant failed to interview and take testimony under oath of the former restaurant worker and the former construction worker. If said interviews would have been taken under oath, Defendant would have learned that the restaurant worker had no first hand knowledge of anything and everything he told the Department of Insurance was hearsay, i.e. told to him by third parties. If Defendant had interviewed the former construction worker under oath, it would have learned that this witness denied virtually every statement attributed to him by DOI. He denied he ever told anyone that Mr. Barbis had paid painters with televisions in lieu of money.

j. Defendant relied on a Department of Insurance Application for a Search Warrant and Statement of Probable Cause in support of the search warrant. That Statement of Probable Cause contains many false statements and misrepresentations.

k. The DOI search took place on May 27, 2009. The search encompassed the Cantina and the home of Milton Barbis and

several other locations. The search revealed no wrongdoing of any kind and no charges of insurance fraud or any other crime have been filed against anyone connected to this matter.

50. As a proximate cause of the aforementioned acts and omissions of defendant, and by reason thereof, Plaintiff seeks damages from Defendant in the amount according to proof

51. As a proximate cause of the aforementioned acts and omissions of defendant, and by reason thereof, Plaintiff seeks punitive damages from Defendant in the amount according to proof.

**FOURTH CAUSE OF ACTION**

[Refusal to Pay Insurance Claims]

Fresno Rock Taco, LLC & Zone Sports Center, LLC

52. Plaintiff refers to and repleads each and every allegation contained in paragraphs 1 through 51 and each of them inclusively and by this reference incorporates the same herein and makes each a part thereof.

53. FRT and ZSC filed a second claim against Policy MZX 808944451 and Policy AZC80831958 on March 30, 2009. The second claim was for loss of income based on Business Income Coverage CP 00 30 10 91. The policy limits are $2,578,000.00 and $6,100,000.00..

54. On or about March 30, 2009, Plaintiffs requested payments for the interruption of the businesses. Defendant denied to acknowledge that Plaintiffs has said coverage.

55. When it was showed to Defendant did, in fact, have said coverage, Defendant continued to deny that Plaintiffs had said coverage and denied the claims.

56. As a proximate cause of Defendant's acts and omissions. Plaintiffs did not have sufficient funds to maintain the businesses.

57. The objective of business interruption insurance is to have funds available to maintain basic expenses until business is resumed.

58. Plaintiff demands the policy limits of $2,587,000.00 and $6,100,000.00.

**FIFTH CAUSE OF ACTION**

[Breach of the Covenant of Good Faith and Fair Dealing]

Fresno Rock Taco, LLC & Zone Sports Center, LLC

59. Plaintiff refers to and repleads each and every allegation contained in paragraphs 1 through 40 and each of them inclusively and by this reference incorporates the same herein and makes each a part thereof.

60. Defendant refused to acknowledge that Plaintiffs has business income coverage in Policy MZX 8028944451 and Policy AZC 80831958 and refused to consider the claims.

61. After many months and once Defendant acknowledged that Plaintiff had business income coverage, Defendant denied the claims without any comment or explanation. No reason was ever given.

62. One of the essential terms and conditions of every [insurance] contract is the covenant of good faith and fair dealing. Every party to a contract has a duty and is required to act in good faith and to deal fairly with all other parties to the contract.

63. In this contract, Defendant did not act in good faith and refused to deal fairly with Plaintiff.

64. As a proximate cause of Defendant's failure to act in good faith and deal fairly with Plaintiff, Plaintiff has been harmed and is demanding punitive damages in an amount according to proof.

65. As a proximate cause of the aforementioned acts and omissions of defendant, and by reason thereof, Plaintiff was damaged and seeks damages in an amount according to proof. Plaintiff seeks punitive damages from Defendant in the amount according to proof

**WHEREAS**, plaintiff prays for damages against defendant, as follows:

1. General damages in an amount according to proof;
2. Punitive and exemplary damages in an amount according to proof;
3. Reasonable attorney's fees, costs and expenses according to proof;
4. Such other and further relief as this Court may deem proper, appropriate and just.

Dated: February 1, 2012

__________________________________

RICHARD HAMLISH

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court for United States District Court for the Eastern District of California by using the CM/ECF system on February 1, 2012.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: February 1, 2012

/s/

RICHARD HAMLISH
Attorney for Plaintiffs

**DEMAND FOR JURY TRIAL**

Pursuant to **Federal Rules of Civil Procedure Rule 38**, plaintiff hereby demands a trial by jury.

Dated: February 1, 2012

/s/ Richard Hamlish

RICHARD HAMLISH