IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRESNO ROCK TACO, LLC, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONAL SURETY CORPORATION,<br><br>Defendant.<br>_____ / | CASE NO. CV F 11-0845 LJO BAM<br><br>**ORDER ON DEFENDANT'S MOTION FOR JUDGMENT ON PLEADINGS**<br>(Doc. 34.) |

**INTRODUCTION**

Defendant National Surety Corporation ("NSC") seeks dismissal under F.R.Civ.P. 12(c) of plaintiffs Fresno Rock Taco, LLC ("Fresno Rock") and Zone Sports Center, LLC's ("Zone Sports'") insurance and bad faith claims in that Zone Sports lacks capacity to sue as a suspended corporation and representations in a bankruptcy proceeding judicially estop Fresno Rock and Zones Sports' (collectively "plaintiffs'") claims. Plaintiffs respond that Zone Sports' good corporate standing has been restored and that they filed no bankruptcy to invoke judicial estoppel. Pursuant to Local Rule 230(g), this Court VACATES the May 30, 2012 hearing in that it has considered on the record NSC's F.R.Civ.P. 12(c) motion for judgment on the pleadings. For the reasons discussed below, this Court DENIES NSC's F.R.Civ.P. 12(c) motion for judgment on the pleadings.

# BACKGROUND[1]

## Summary

Plaintiffs are each California limited liability companies. Zone Sports is a real estate developer and owns a Fresno commercial real estate project ("property"). Fresno Rock operated a restaurant/night club as a property lessee. NSC issued an unspecified insurance policy to plaintiffs. NSC argues that plaintiffs' insurance claim under the policy for theft and lost business income attempts to defraud bankruptcy creditors to invoke judicial estoppel to bar the FAC's claims for breach of insurance contract and bad faith. NSC took the position that as a suspended corporation, Zone Sports lacks capacity to sue and that plaintiffs' counsel is subject to criminal penalty for purporting to exercise Zone Sports' power to sue. Plaintiffs respond that restoration of Zone Sports' good standing permits it to proceed with this action and that plaintiffs are not subject to judicial estoppel as non-parties to the bankruptcy at issue.

## Plaintiffs' Insurance Claims

Plaintiffs claim that on an unspecified date in early 2009, audio/visual equipment was stolen from Fresno Rock's restaurant/night club. On February 15, 2009, plaintiffs submitted a $139,172.28 claim to NSC. On March 30, 2009, for lost business income, Fresno Rock submitted a $2,578,000 policy limits claim, and Zone Sports submitted a $6.1 million policy-limits claim. On February 4, 2010, NSC denied plaintiffs' claims based on what it characterizes as "material misrepresentations" as to alleged theft of the audio/visual equipment. The denials give rise to the FAC's breach of insurance contract and bad faith claims against NSC to the effect that NSC wrongly denied the claims and failed to investigate them.

## Milton Barbis' Bankruptcy

NSC claims that plaintiffs are wholly owned by Milton Barbis ("Mr. Barbis"). Plaintiffs deny such claim. Zone Sports' articles of organization filed with the California Secretary of State on February 21, 2001 indicate that Zone Sports is managed by one manager, an executive who operates it. Plaintiffs note that Mr. Barbis is not a Zone Sports member, that is, an owner. Plaintiffs explain that Zone Sports "has one manager but it is not a single member limited liability company which means [Zone Sports]

---

[1] The factual background is derived generally from plaintiffs' operative first amended complaint ("FAC") and matters of which this Court may take judicial notice.

1 cannot be wholly owned by Barbis."

2 Plaintiffs note that Fresno Rock has one member, Mr. Barbis, but has six investors.

3 On October 30, 2009, Mr. Barbis filed a chapter 7 bankruptcy. NSC notes that the Mr. Barbis' bankruptcy petition values plaintiffs at $0.00 and fails to disclose plaintiffs' contingent claims against NSC. NSC further notes that Mr. Barbis failed to amend his bankruptcy petition to disclose his claims against NSC.

## DISCUSSION

### F.R.Civ.P. 12(c) Motion For Judgment On The Pleadings Standards

As discussed below, NSC contends that plaintiffs' FAC claims are legally barred to warrant judgment on the pleadings in NSC's favor.

F.R.Civ.P. 12(c) permits a party to seek judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial." "A motion for judgment on the pleadings should be granted where it appears the moving party is entitled to judgment as a matter of law." *Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir. 2003). A "judgment on the pleadings is appropriate when, even if all allegations in the complaint are true, the moving party is entitled to judgment as a matter of law." *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993).

"A judgment on the pleadings is a decision on the merits." *3550 Stevens Creek Associates v. Barclays Bank of California*, 915 F.2d 1355, 1356 (9th Cir. 1990), *cert. denied*, 500 U.S. 917, 111 S.Ct. 2014 (1991). A F.R.Civ.P. 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Herbert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam). "[T]he central issue is whether, in light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001).

Courts dismiss complaints under F.R.Civ.P. 12(c) for either of two reasons: "(1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory." *Gutierrez v. RWD Technologies, Inc.*, 279 F.Supp.2d 1223, 1224 (E.D. Cal. 2003). The standards for deciding F.R.Civ.P. 12(b)(6) and F.R.Civ.P. 12(c) motions are the same. *Great Plains Trust v. Morgan Stanley Dean Witter*, 313 F.3d 305, 313, n. 8 (5th Cir. 2002). "A Rule 12(c) motion challenges the legal sufficiency of the

opposing party's pleadings and operates in much the same manner as a motion to dismiss under Rule 12(b)(6)." *Morgan v. County of Yolo*, 436 F.Supp.2d 1152, 1154-1155 (E.D. Cal. 2006).

"When considering a motion for judgment on the pleadings, this court may consider facts that 'are contained in materials of which the court may take judicial notice.'" *Heliotrope General, Inc. v. Ford Motor Co.*, 189 F.3d 971, 981, n. 18 (9th Cir. 1999) (citation omitted). A motion for judgment on the pleadings may be granted if, after assessing the complaint and matters for which judicial notice is proper, it appears "beyond doubt that the [non-moving party] cannot prove any facts that would support his claim for relief." *Morgan v. County of Yolo*, 436 F.Supp.2d 1152, 1155 (E.D. Cal. 2006), *aff'd,* 277 F. Appx. 734 (9th Cir. 2008).

A fact subject to judicial notice is not subject to reasonable dispute because it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." F.R.Evid. 201(b). A "court may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 669, 689, (9th Cir. 2001). Such a fact is "conclusive" and "precludes either party from introducing evidence to disprove that fact." *Metropolitan Creditors' Trust v. Pricewaterhousecoopers, LLP*, 463 F.Supp.2d 1193, 1197 (E.D. Wash. 2006).

With these standards in mind, this Court turns to NSC's challenges to the FAC's claims.

**Suspended Corporation**

NSC has challenged Zone Sports ability to pursue claims as a suspended corporation.

For a corporation, capacity to sue is determined "by the law under which it was organized." F.R.Civ.P. 17(b)(2). NSC explains that California law governs Zone Sports' capacity to sue since it is organized under California law.

Under California Revenue and Tax Code section 23301 ("section 23301"), a California corporation's powers, rights and privileges may be suspended upon failure to pay taxes. NSC points to California Secretary of State records to the effect that on November 1, 2011, Zone Sports' powers, privileges and rights were suspended for failure to pay taxes.

Plaintiffs acknowledge that Zone Sports was suspended from November 1, 2011 to May 9, 2012 for "a small tax arrearage that had inadvertently been unpaid." Plaintiffs explain that after Zone Sports

1  paid the outstanding tax, the California Franchise Tax Board issued a May 9, 2012 certificate of revivor,

2  retroactive to January 1, 2012.

3  In *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.*, 136 Cal.App.4th 212,

4  217-218, 39 Cal.Rptr.3d 33 (2006), the California Court of Appeal addressed section 23301 and the

5  effect of a certificate of revivor:

> The suspension of the corporate powers, rights, and privileges means a suspended corporation cannot sue or defend a lawsuit while its taxes remain unpaid. . . . Once a suspended corporation pays its taxes and obtains a certificate of revivor, however, the corporation may be allowed to carry on the litigation. . . . Its revivor will validate most otherwise invalid prior proceedings in the case. The underlying purpose of this statute is to induce the corporation to pay its taxes. (Citations omitted.)

10  Plaintiffs contend that Zone Sports' "suspension has been cured and it now enjoys status as an

11  LLC in good standing." Plaintiffs continue that "prior invalid conduct and/or proceeding which took

12  place during the suspension has been validated."

13  Zone Sports was suspended for six months when this action was pending. However, Zone Sports

14  has paid outstanding taxes and received a certificate of revivor to permit it to proceed in this action,

15  which NSC concedes in its reply papers. Section 23301's purpose has been fulfilled with Zone Sports'

16  payment of taxes. The brief suspension fails to deprive Zone Sports of its capacity to sue.

17  NSC also claims that plaintiffs' counsel Richard Hamlish ("Mr. Hamlish") is guilty of a

18  misdemeanor for exercising rights and powers of a corporation suspended under section 23301. *See* Cal.

19  Rev. & Tax Code, § 19719(a) ("Any person who attempts or purports to exercise the powers, rights, and

20  privileges of a corporation that has been suspended pursuant to Section 23301 . . . is punishable by a fine

21  of not less than two hundred fifty dollars ($250) and not exceeding one thousand dollars ($1,000), or by

22  imprisonment not exceeding one year, or both fine and imprisonment.") NSC points to Mr. Hamlish's

23  post-suspension acts of filing the FAC on February 1, 2012 and taking a March 2012 deposition for

24  plaintiffs.

25  Plaintiffs respond that Mr. Hamlish's purported misdemeanor is irrelevant in that he was unaware

26  of the suspension until NSC raised the issue. "If the company is revived, there is no need for section

27  / / /

28  / / /

19719, subdivision (b),[2] as the corporation can then exercise its corporate powers." *Kaufman & Broad Communities*, 136 Cal.App.4th at 221, 39 Cal.Rptr.3d 33.

This Court agrees with plaintiffs that the alleged misdemeanor offense is irrelevant, especially given the retroactive effect of the certificate of revivor.

### **Judicial Estoppel**

NSC argues that judicial estoppel bars plaintiffs' FAC claims in that Mr. Barbis' knowingly failed to list claims against NSC on his bankruptcy petition. Plaintiffs respond that judicial estoppel does not apply to them in that they did not file bankruptcy.

#### *General Principles*

Judicial estoppel "precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996). The Ninth Circuit Court of Appeals has explained the rationale of judicial estoppel:

> The policies underlying preclusion of inconsistent positions are general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings. . . . Judicial estoppel is intended to protect against a litigant playing fast and loose with the courts. . . . Because it is intended to protect the dignity of the judicial process, it is an equitable doctrine invoked by a court at its discretion.

*Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir.1990), *cert. denied*, 501 U.S. 1260, 111 S.Ct. 2915, 115 L.Ed.2d 1078 (1991).

Judicial estoppel applies to inconsistent positions taken in the same and multiple litigation. *See Rissetto*, 94 F.3d at 605 ("We now make it explicit that the doctrine of judicial estoppel is not confined to inconsistent positions taken in the same litigation."); *see also Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 783 (9th Cir. 2001) ("The application of judicial estoppel is not limited to bar the assertion of inconsistent positions in the same litigation, but is also appropriate to bar litigants from making incompatible statements in two different cases.").

#### *Bankruptcy Context*

"In the bankruptcy context, a party is judicially estopped from asserting a cause of action not

---

[2] Although this statute addresses an insurer or its counsel, it supports plaintiffs' points as to Mr. Hamlish.

raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." *Hamilton*, 270 F.3d at 783 *see Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir.1992) (failure to give notice of a potential cause of action in bankruptcy schedules and Disclosure Statements estops the debtor from prosecuting that cause of action); *In re Coastal Plains*, 179 F.3d 197, 208 (5th Cir.1999), *cert. denied*, 528 U.S. 1117, 120 S.Ct. 936, 145 L.Ed.2d 814 (2000) (holding that a debtor is barred from bringing claims not disclosed in its bankruptcy schedules); *Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 572 (1st Cir.), *cert. denied*, 510 U.S. 931, 114 S.Ct. 344, 126 L.Ed.2d 309 (1993) (debtor who obtained relief on the representation that no claims existed cannot resurrect such claims and obtain relief on the opposite basis); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3rd Cir.), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988) (debtor's failure to list potential claims against a creditor "worked in opposition to preservation of the integrity of the system which the doctrine of judicial estoppel seeks to protect," and debtor is estopped by reason of such failure to disclose).

Moreover, judicial estoppel precludes a plaintiff-debtor "from pursuing claims about which he had knowledge, but did not disclose, during his bankruptcy proceedings." *Hamilton*, 270 F.3d at 784. "Judicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset." *Hamilton*, 270 F.3d at 784; *see Hay*, 978 F.2d at 557 ("We recognize that all facts were not known to Desert Mountain at that time, but enough was known to require notification of the asset to the bankruptcy court."); *In re Coastal Plains*, 179 F.3d at 208 (quoting *Youngblood Group v. Lufkin Fed. Sav. & Loan Ass'n*, 932 F.Supp. 859, 867 (E.D. Tex.1996)) ("[I]f the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action, then that is a known cause of action such that it must be disclosed") (internal quotations omitted). "The debtor's duty to disclose potential claims as assets does not end when the debtor files schedules, but instead continues for the duration of the bankruptcy proceeding." *Hamilton*, 270 F.3d at 785.

NSC argues that Mr. Barbis knew of claims against NSC when he filed his October 30, 2009 bankruptcy petition in that he submitted the insurance claim in February 2009 to seek policy limits. NSC

7

1  points to Mr. Barbis' "None" response to Schedule B, Question No. 21 inquiring into "Other contingent
2  and unliquidated claims of every nature . . ." *See Hamilton*, 270 F.2d at 281 (indicating that this question
3  is the proper place to list insurance claims). NSC further notes that Mr. Barbis could have included the
4  claims as part of plaintiffs' value but instead listed plaintiffs' value as $0. NSC notes the absence of
5  amended schedules.

6  NSC characterizes as immaterial Mr. Barbis' delay to pursue claims at issue in this action (April
7  20, 2011 for Fresno Rock and February 1, 2012 for Zone Sports) in that judicial estoppel applies when
8  a debtor knows "of enough facts to know that a potential cause of action exists during the pendency of
9  the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action
10 as a contingent asset." *Hamilton*, 270 F.3d at 784. NSC argues that Mr. Barbis knew of the insurance
11 breach of contract and bad faith claims as of NSC's February 4, 2010 denial of his insurance claims but
12 failed to amend his pending bankruptcy schedules to include the breach of insurance contract and bad
13 faith claims.

14 NSC accuses Mr. Barbis of "fraud and abuse of the court system" in that for bankruptcy
15 purposes, he represented plaintiffs having no value yet prosecutes his breach of insurance contract and
16 bad faith claims to which he attaches more than $8 million in contract damages. NSC concludes that
17 if Mr. Barbis succeeds in this action, he could gain millions of dollars which would be beyond the reach
18 of his creditors in that plaintiffs are deemed assets abandoned by the bankruptcy trustee.

19 Plaintiffs respond that they are not subject to judicial estoppel in that they filed no bankruptcy
20 and as limited liability companies could not be included in Mr. Barbis' bankruptcy given 11 U.S.C. §
21 727(a)(1), under which Mr. Barbis filed his bankruptcy and which provides: "The court shall grant the
22 debtor a discharge, unless – (1) the debtor is not an individual . . ." Plaintiffs note that Mr. Barbis is not
23 a plaintiff in this action and that representations on his bankruptcy petition are neither relevant to
24 plaintiffs' claims nor binding on plaintiffs, which are corporate entities separate from him. Plaintiffs
25 rely on Zone Sports' articles of organization which identify Mr. Barbis' limited roles of manager and
26 agent for service of process. Plaintiffs point to Mr. Barbis' absence of interest in Zone Sports.

27 Plaintiffs challenge NSC's claims regarding their values reflected on Mr. Barbis' bankruptcy
28 schedules in that the U.S. Trustee evaluated each plaintiff and calculated negative cash and current

values. Plaintiffs note that if they prevail in this action, their recovery would be subject to judgments and debts against them and thus will not be paid to Mr. Barbis.

NSC fails to establish application of judicial estoppel to plaintiffs. NSC provides no authority to support that Mr. Barbis' chapter 7 bankruptcy representations judicially estop the claims of plaintiffs, corporate entities in which Mr. Barbis has limited interests.[3] NSC relies on authorities involving a debtor's claims, not claims of corporate entities separate from the debtor. Mr. Barbis is the bankruptcy debtor, not plaintiffs. Mr. Barbis' purported knowledge of claims would be relevant if he pursued them as plaintiff. He does not. Plaintiffs are not subject to judicial estoppel because any position asserted in Mr. Barbis' bankruptcy is imputed to him and is not inconsistent with plaintiffs' positions in this action.

## **Alter Ego**

Plaintiffs take exception to NSC's attempt to characterize plaintiffs as Mr. Barbis' alter egos in the absence of evidence to satisfy alter ego elements.

"Ordinarily, a corporation is regarded as a legal entity separate and distinct from its stockholders, officers and directors." *Communist Party v. 522 Valencia, Inc.*, 35 Cal.App.4th 980, 993, 41 Cal.Rptr.2d 618 (1995). "The terminology 'alter ego' or 'piercing the corporate veil' refers to situations where there has been an abuse of corporate privilege, because of which the equitable owner of a corporation will be held liable for the actions of the corporation." *Roman Catholic Archbishop v. Superior Court*, 15 Cal.App.3d 405, 411, 93 Cal.Rptr. 338 (1971).

The alter ego doctrine applies if: (1) "there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist," and (2) "the acts are treated as those of the corporation alone, an inequitable result will follow." *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal.App.2d 825, 837, 26 Cal.Rptr. 806 (1962). "Courts will pierce the corporate veil only in exceptional circumstances." *Calvert v. Huckins*, 875 F.Supp. 674, 678 (E.D. Cal. 1995) (quoting *National Precast Crypt Co. v. Dy-Core of Pennsylvania, Inc.*, 785 F.Supp. 1186, 1192 (W.D. Pa.1992)).

Plaintiffs note the absence of support to apply the alter ego doctrine, including commingling of

---

[3] NSC points to April 25, 2012 printouts from the California Secretary of State which note Mr. Barbis as "GP/MGR/MEMB." NSC extrapolates that Mr. Barbis owns 100 percent of each plaintiff. The printouts fail to establish Mr. Barbis' 100 percent ownership and contribute to factual issues which cannot be resolved on NSC's F.R.Civ.P. 12(c) motion.

9

funds, Mr. Barbis' liability for plaintiffs' debts, plaintiffs' common ownership, employees and officers, and failure to maintain separate operations and corporate records.

Plaintiffs raise valid points. The record is insufficient to qualify plaintiffs as Mr. Barbis' alter egos.

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court DENIES NSC F.R.Civ.P. 12(c) relief.

IT IS SO ORDERED.

**Dated:   May 24, 2012**               /s/ Lawrence J. O'Neill
                                        UNITED STATES DISTRICT JUDGE