1

2

3

4

5

6

7

8

9          **IN THE UNITED STATES DISTRICT COURT**

10          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

11

12
     FRESNO ROCK TACO, LLC and ZONE              CASE NO. CV F 11-0845 LJO BAM
13   SPORTS CENTER, LLC,
                                                 **ORDER ON PLAINTIFFS' MOTION FOR**
14                   Plaintiffs,                 **SUMMARY ADJUDICATION** (Doc. 54)

15           vs.

16   NATIONAL SURETY CORPORATION,

17                   Defendant.

18   _____/

19                              **INTRODUCTION**

20          Plaintiffs Fresno Rock Taco, LLC ("Rock Taco") and Zone Sports Center, LLC's ("Zone

21   Sports'") (collectively "Plaintiffs") seek summary adjudication on four issues in this breach of insurance

22   contract and bad faith action.  Defendant National Surety Corporation ("National Surety") opposes

23   Plaintiffs' summary adjudication motion on a number of grounds.  First, National Surety contends that

24   Plaintiffs' numerous evidentiary deficiencies precludes summary adjudication in their favor.  Second,

25   National Surety attacks the merits of Plaintiffs' arguments.   For the reasons outlined below, this Court

26   strikes certain exhibits filed by Plaintiffs in support of this motion.  In addition, this Court finds that

27   National Surety demonstrates clearly that questions of material fact exist to preclude summary

28   adjudication.  For these reasons, this Court DENIES Plaintiffs' summary adjudication motion.

                                                  1

# BACKGROUND

## Summary

Plaintiffs are each California limited liability companies.  Zone Sports is a real estate developer that owns a Fresno commercial real estate project that did business as Village at Granite Park.  Rock Taco operated a restaurant/night club as a property lessee within the Village at Granite Park that did business as Cabo Wabo Cantina and Memphis Blues ("Cantina").  Plaintiffs claim that in February 2009, audio/visual equipment was stolen from Rock Taco's Cantina restaurant/night club.  Plaintiffs submitted an insurance claim to National Surety based on that theft pursuant to insurance policies between National Surety and Plaintiffs.  National Surety denied Plaintiffs' claims, however, based on what it characterizes as "material misrepresentations" and "inconsistencies" as to alleged theft of the audio/visual equipment.  National Surety's denial of Plaintiffs' claims gave rise to this breach of insurance contract and bad faith action against National Surety.

In this motion, Plaintiffs seek summary adjudication in their favor that National Surety wrongly denied their claims and failed to investigate them.  Plaintiffs dispute the eight "inconsistencies" relied on by National Surety to deny their insurance claims.  Plaintiffs argue that the undisputed material facts establish that National Surety breached the insurance contacts in a number of ways, failed to assist Rock Taco, and failed to act in a timely manner.  Plaintiffs further challenge the denial letter as insufficient.

## The Alleged Theft and Rock Taco's Claim Submission

The Cantina opened to the public on August 28, 2008.  Before it opened, Rock Taco purchased and installed sophisticated audio/visual equipment for Cantina in the amount of $314,000.00 from California Music Express ("CME").  This equipment included several high definition ("HD") televisions, sound mixers, speakers, lights, and other equipment.  In addition to the charge for the equipment, CME charged Rock Taco $100,000.00 for installation.  Rock Taco did not pay the entire installation amount, however, because neither party had acquired the proper permits to install some of the equipment.  Rock Taco argues that CME failed to secure the proper permits, while National Surety submits that it was Rock Taco's responsibility.  It is unclear whether the proper permits were ever obtained or whether the installation of all of the equipment was complete.

///

1    The Cantina closed for remodeling on January 11, 2009.[1]  According to Plaintiffs, at some time

2    between January 12 and January 28, 2009, a theft occurred at the Cantina.  Gabriel Zaragoza ("Mr.

3    Zaragoza"), the Cantina maintenance person, submits a declaration declaring that he saw three persons

4    stealing some speakers that were mounted on the outside of the Cantina.[2]  Mr. Zaragoza attempted to

5    chase the individuals but they evaded him and escaped.  Moreover, Mr. Zaragoza informed Milton

6    Barbis ("Mr. Barbis")[3] that, at some point between January 12 and January 28, 2009, the large copper

7    doors at the entrance to the Cantina had been damaged.  Mr. Zaragoza told Mr. Barbis that it appeared

8    that a pick-up truck backed into the doors, forcing them open.  Mr. Zaragoza did a cursory inspection

9    of the area and then informed Mr. Barbis that it appeared that the Cantina had been burglarized.

10   Plaintiffs believed that the missing equipment included HD televisions, speakers, and sound mixers.

11   After a brief inspection of the premises, Mr. Barbis contacted his insurance agent Chris Gutilla

12   ("Mr. Gutilla") and requested Mr. Gutilla to initiate a claim for Rock Taco.   Mr. Gutilla is an insurance

13   agent who works at a private insurance agency in Fresno.  Mr. Gutilla advised Mr. Barbis that he must

14   report the theft to the police first and get a police report number before he can file an insurance claim

15   for the theft.  The parties dispute whether it was Mr. Gutilla's personal policy or National Surety's policy

16   to call the police before filing the insurance claim.  Plaintiffs submit that the only reason the police were

17   called to report the alleged theft and burglary was because of Mr. Gutilla's position that he would not

18   submit an insurance claim without a police report.  Based on this advice, Mr. Barbis asked Mr. Zaragoza

19   to contact the Fresno Police Department.[4]

20   _____

21   [1]This is a disputed fact.  National Surety submits evidence that the Cantina had run into financial problems and that
     Rock Taco closed it indefinitely for that purpose.  There is additional evidence that the Cabo Wabo Cantina closed in

22   December 2008 because of litigation between rock legend Sammy Hagar and Rock Taco.  The Cantina re-opened in late
     December 2008 through mid-January 2009 as Memphis Blues.

23

24   [2]National Surety objects to the Zaragoza declaration on a number of grounds, including that the declaration is
     unsigned and fails to identify the motion in support of which it was made.  Moreover, National Surety points out that although

25   Mr. Zaragoza claims that he witnessed unknown assailants stealing equipment outside of the Cantina, that equipment was not
     identified in the Sworn Statement in Proof of Loss, which includes only audio/visual equipment purportedly inside the

26   Cantina.  Accordingly, National Surety submits that the Zaragoza declaration is also irrelevant.

27   [3]Although Plaintiffs fail to explain the identity of Mr. Barbis and his relationship to Mr. Zaragoza, the Cantina, or
     Rock Taco, National Surety asserts that Plaintiffs are wholly owned by Mr. Barbis.  Plaintiffs deny this claim.

28   [4]It is disputed whether Mr. Barbis or Mr. Zaragoza spoke with the police department.

3

On February 5, 2009, Michael Buchbinder ("Mr. Buchbinder"),[5] a community service officer with the Fresno Police Department, contacted and interviewed Mr. Zaragoza at the Cantina.   The interview lasted fewer than fifteen minutes.  According to Plaintiffs, Mr. Buchbinder did not inspect the premises to determine how entrance was gained to the Cantina, nor did he inspect the premises to verify which items were stolen.  According to National Surety, Mr. Buchbinder did a walk-around the premises to determine if there were signs of forced entry.   Finding none, he did not do a complete theft investigation.  Mr. Buchbinder finalized his report on February 6, 2009.

On February 14, 2009, Mr. Barbis emailed the Fresno Police Department report number to Mr. Gutilla.  The next day, Mr. Gutilla submitted claims to National Surety on behalf of Plaintiffs.

**Claim Assignment and Red Flags**

Roger Suelzle ("Mr. Suelzle") was assigned by National Surety to be the adjuster to Rock Taco's claim.  Mr. Suelzle ordered the police report and summarized it.  Thereafter, on March 10, 2009, Mr. Suelzle's supervisor Jeffrey Kaiser suggested that the claim be referred to the special investigation unit ("SIU") for the following reasons: (1) first year of the policy; (2) no obvious forced entry reported in the police report; (3) insured delayed reporting to police; (4) insured was closed for remodeling at the time of the loss, yet left property on site; and (5) insured had alarm, but was not sure if it was working.

On March 11, 2009 , John Auvinen ("Mr. Auvinen"), SIU Program Manager for National Surety, received a phone call from Detective Sergeant Benjamin Rodriguez with information regarding Plaintiffs' claim.  Detective Rodriguez informed Mr. Auvinen that he was investigating potential fraud in connection with the report.  He also requested a copy of National Surety's claim file.

**Loss Inventory**

Also on March 11, 2009, Mr. Suelzle prepared the forms necessary to process the claim and mailed them to Mr. Barbis.  Mr. Suelzle requested Mr. Barbis to complete the partially-prepared Proof of Loss form.  Mr. Barbis was asked to complete the blank portions of the Sworn Statement, fill in the total loss amount, sign it, and return it to Mr. Suelzle.  National Surety also requested a complete inventory of the stolen items along with the replacement cost or present value.

---

[5]National Surety objects to the Buchbinder declaration because, like the Zaragoza declaration, the Buchbinder declaration is unsigned.  Plaintiffs submitted several unsigned declarations in support of this motion.

Mr. Barbis asked HPL, a CME competitor, to assist him in preparing an inventory of what was stolen.  Mr. Barbis gave HPL a list of items purchased from CME.  That list of items included items that were removed from the Cantina in December 2008.  According to Plaintiffs, HPL was not informed that certain items were removed and therefore should not have been included in the inventory of lost items, because Mr. Barbis did not know that they were removed.  Accordingly, Mr. Barbis submitted an inventory of what he believed to be a list of the stolen equipment on March 17, 2008.  Mr. Barbis also included a proposal for repair to the copper doors that he alleges were damaged during the burglary.

On March 30, 2009, Mr. Barbis executed a Sworn Statement in Proof of Loss ("Sworn Statement").  All portions of that statement that were printed by computer were prepared by Mr. Suelzle.  Mr. Barbis wrote in the amount of loss and submitted the loss inventory.  On the same day, Mr. Barbis inquired as to the status of the business income loss claims for Fresno Rock and Zone Sports.

Undisputedly, the inventory of stolen items included items that had already been removed from the Cantina prior to the alleged theft.  Mr. Barbis claims that he did not know that Paul Binder ("Mr. Binder") of CME removed certain items from the Cantina on December 17, 2008 and submits that Mr. Binder stole those items without his knowledge or consent.  Mr. Binder testified that Mr. Barbis gave him permission to take the items and that he sent Mr. Barbis and Mr. Barbis' business partners a detailed list of items that he took.  Mr. Binder claims that he repossessed these items to reduce the amount of money Rock Taco owed to CME due to non-payment of the installation of the audio/visual equipment.  Mr. Binder further testified that the interior of the Cantina incurred damage as part of the repossession by CME in December 2008.  Mr. Barbis disputes Mr. Binder's testimony.

**Initial Rock Taco Claim Investigation**

The day after receiving the Sworn Statement, Mr. Auvinen retained J.D. Wesson & Associates to assist in the investigation of the claims.  At the time, he instructed J.D. Wesson to interview Mr. Binder of CME and Paul Hovannes Libradian ("Mr. Libradian") of HPL.  J.D. Wesson interviewed Mr. Binder on April 9, 2012.  During the interview, Mr. Price obtained a copy of a December 17, 2008 email from Mr. Binder to Mr. Barbis and his business partners Howard Young and John Benjamin.  That email detailed the items that Mr. Binder repossessed, purportedly with the permission of Plaintiffs prior to the sending of the email in order to reduce Plaintiffs' debt to CME.

**Zone Sports Claim**

On May 11, 2009, National Surety opened a second claim under Zone Sports' policy. Zone Sports also claimed damage to the copper doors. Zone Sports asserted that the damage to the doors was its loss as the landlord of the Cantina. According to National Surety, it began to investigate both claims together. Plaintiffs contend that National Surety failed to investigate the Zone Sports' claim properly.

**Further Investigation**

In May 2009, information was provided to National Surety that the California Department of Insurance ("DOI") had executed search warrants on Rock Taco and other locations as part of an insurance fraud investigation.

National Surety took the Examination of Oath ("EUO") of Mr. Barbis on October 29, 2009. Between that day and December 11, 2009, National Surety conducted a follow-up investigation to verify information provided by Mr. Barbis in his EUO. They inspected the site, requested photographs of the damage to the copper doors, and requested a proposal for repair to the doors, among other things. National Surety was never provided with the photographs of the doors, because the person who had the photographs claimed that he could not get them off of his phone.

**Claims Denial and Policies**

On February 4, 2010, National Surety denied both the Rock Taco and Zone Sports' claims based on "inconsistencies" and "misrepresentations of fact by Mr. Barbis[.]" National Surety asserted that it discovered these inconsistencies through its own investigation, as explained in the denial letter, and the investigation of the California Department of Insurance ("DOI"). National Surety relied on the "Concealment, Misrepresentation, or Fraud" provision in the policies to void coverage. National Surety identified the inconsistencies including, but not limited to, the following:

- According to the Fresno Police Report, Mr. Barbis made a statement to the reporting officer Michael Buchbinder; Mr. Barbis testified during his EUO that he did not recall ever speaking to Officer Buchbinder;

- According to the Fresno Police Report, Mr. Barbis advised Officer Buchbinder that the alarm on the building did not work; Mr. Barbis testified during his EUO that he did not recall whether the security system was working at the time of the theft;

- Mr. Barbis testified during this EUO that somebody had taken a "big sledgehammer or something, to the tower doors, because they were dented and

1     dramatically bent"; the Fresno Police Report contains no mention of damage to
      the tower doors, instead focusing on the front wooden doors that would open
2     when "jiggled";

3     •     According to the Sworn Statement in Proof of Loss, the alleged theft occurred on
            February 15, 2009; Mr. Barbis reported the theft to the Fresno police on February
4           5, 2009;

5     •     According to the Sworn Statement in Proof of Loss, no other person or persons
            had any interest or encumbrance on the subject business personal property; the
6           Proof of Loss failed to disclose the financial interests of either Paul Binder or
            Omni Financial in the subject equipment;
7
8     •     As indicated above, the Sworn Statement in Proof of Loss for $138,172.28
            included equipment that had been repossessed by Paul Binder in December 2008;

9     •     The damage to the interior of the Cabo Wabo Cantina appears to have resulted
            from the repossession and/or removal of the equipment in December 2008, rather
10          than any purported theft;

11    •     According to the DOI Affidavit, based on interviews with a former restaurant
            employee and former construction supervisor, some of the televisions included
12          in the Claim were actually given by Mr. Barbis to workers for painting work
            performed at the closed restaurant.
13

14    Denial Letter dated February 4, 2010, Pl. Exh. 20; Def. Exh. H.   National Surety received no requests

15    for reconsideration of the denial.

16          The denial letter identifies Fresno Rock and Zone Sports as insureds and a separate policy for

17    each plaintiff with effective dates during the time of the alleged theft.  Although Plaintiffs purported to

18    submit the policies as evidence in this motion, those exhibits were untimely filed.  In addition, the policy

19    that Plaintiff identifies as being associated with one plaintiff is actually the policy for the other plaintiff.

20    Another document is also misidentified as an insurance policy.  At this time, this Court has no proper

21    evidence of either insurance policy.  National Surety argues that because the policies were not submitted

22    into evidence, Plaintiffs failed to any of its claims asserted in this motion.  National Surety's submitted

23    evidence, however, includes portions of the relevant policies and admissions that National Surety insured

24    Plaintiffs during the time period. *See, e.g.*, Declaration of John Auvinen, ¶¶3-4.  Accordingly, based on

25    the evidence presented, it is undisputed that Rock Taco was insured by National Surety under policy #

26    MZX 80894445 ("Rock Taco Policy") and Zone Sports was insured by National Surety under policy #

27    AZC 80831958 ("Zone Sports Policy").

28    ///

7

**Procedural History**

Plaintiffs filed their summary adjudication motion on July 2, 2012, the day of the dispositive motion deadline.  On that day, Plaintiffs filed their notice of motion, memorandum of points and authorities, statement of undisputed facts, and some exhibits.  Those exhibits were filed out of order, and included the unsigned declarations of Mr. Zaragoza, Mr. Buchbinder, and others.  Between July 3, 2012 and July 11, 2012, Plaintiffs continued to file exhibits randomly on the docket without explanation or leave to do so.  *See* Docs. 88-97, 99-106.  National Surety filed its opposition on July 31, 2012.  As part of its opposition, National Surety argues that Plaintiffs' motion should be denied because the supporting documents are inadmissible on a number of grounds.  National Surety also opposes Plaintiffs' motion substantively.  Plaintiffs filed a reply on August 7, 2012.  Having read and reviewed the parties' arguments, legal authorities, exhibits, and the record, this Court finds this motion suitable for a decision without a hearing.  Accordingly, this Court VACATES the August 14, 2012 hearing on this matter and issues the following order.

**STANDARD OF REVIEW**

Plaintiffs seek summary adjudication as to the breach of contract claims.  They argue that they are entitled to judgment as a matter of law on these claims because National Surety wrongfully denied their claims and breached their insurance contracts.  National Surety argues that because their evidence is inadmissible, Plaintiffs have failed to establish their claims.  In addition, National Surety argues that genuine issues of disputed facts preclude summary adjudication.

Fed. R. Civ. P.  56(a) permits a party to seek summary judgment "identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  "A district court may dispose of a particular claim or defense by summary judgment when one of the parties is entitled to judgment as a matter of law on that claim or defense." *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir.1999).

Summary judgment or adjudication is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assn.*, 809 F.2d 626, 630 (9th Cir.1987).  The purpose of summary judgment

is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.*, 475 U.S. at 586, n. 11; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir.1985).

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. Fed. R. Civ. P. 56(a), (c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir.1997); *see also*, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence of the party opposing summary judgment is to be believed and all reasonable inferences from the facts must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255; Matsushita, 475 U.S. at 587. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252.

To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir.2000); *see also, Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (2007) (moving party is able to prevail "by pointing out that there is an absence of evidence to support the nonmoving party's case"). A "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" to entitle the moving party to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

1    "If a moving party fails to carry its initial burden of production, the nonmoving party has no

2    obligation to produce anything, even if the nonmoving party would have the ultimate burden of

3    persuasion at trial." *Nissan Fire*, 210 F.3d at 1102–1103.  "If, however, a moving party carries its burden

4    of production, the nonmoving party must produce evidence to support its claim or defense." *Id*. at 1103.

5    "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the

6    moving party wins the motion for summary judgment." *Id*.   "But if the nonmoving party produces

7    enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." Id.;

8    *Celotex*, 477 U.S. at 322.  "The amount of evidence necessary to raise a genuine issue of material fact

9    is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.' " *Aydin*

10   *Corp. v. Loral Corp.*, 718 F.2d 897, 902 (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253,

11   288–289 (1968)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will

12   be insufficient." *Anderson*, 477 U.S. at 252.

13                                          **DISCUSSION**

14                           **Admissibility of Plaintiffs' Exhibits**

15          National Surety first argues that this motion should be denied because the supporting documents

16   are inadmissible.  As set forth above, Because a Fed. R. Civ. P. 56 requires the moving party to submit

17   evidence to support the motion.  National Surety concludes that Plaintiffs' motion fails, because they

18   failed to submit admissible evidence to support it.

19          The exhibits filed by Plaintiffs in support of this motion present various procedural and

20   substantive inadequacies.  National Surety groups these deficiencies into the following categories–(1)

21   documents that are unsigned; (2) documents that fail to identify their motion; (3) documents not served:

22   (4) unauthenticated exhibits; and (5) untimely filed exhibits.  The Court considers the admissibility of

23   each group of exhibits separately.   After addressing which documents are inadmissible, the Court

24   considers National Surety's argument that this motion fails based on the lack of evidence.

25                                **Unsigned Declarations**

26          Plaintiffs filed multiple declarations in support of their motion that were unsigned, including the

27   declarations of Mr. Barbis, Mr. Zaragoza, and Mr. Buchbinder.  Fed. R. Civ. P. 56(c)(4) requires an

28   "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set

out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." In addition, 28 U.S.C. §1746 requires that an affiant declare, under penalty of perjury, that the facts contained in the affidavit are true. This statute requires the affidavit be signed and dated. *Id*. An unsigned affidavit or declaration is an inadmissible document because there is no proof that the declarant saw the document or approved of its contents. *See Elder-Keep v. Askamit*, 460 F.3d 979, 984 (8th Cir. 2006) (court properly rejected electronically-filed unsigned affidavits in summary judgment proceeding). Because these unsigned declarations fail to meet the requirements of 28 U.S.C. §1746, they are defective and cannot be considered with this motion. Accordingly, this Court shall not consider any unsigned declarations submitted in support of this motion.

### Failure to Identify the Motion

National Surety further argues that all declarations and affidavits filed in support of this motion should be rejected because they fail to comply with Local Rule 142(a)(1), which requires that an affidavit must state "the party or parties on whose behalf it is submitted, and the motion to which it pertains." Although technically all of the declarations and affidavits submitted by Plaintiffs fail to comply with this rule, National Surety fails to explain what prejudice it has experienced, if any, by Plaintiffs' failure to comply with this rule. In addition, it is clear that the documents support this motion and are associated with this action. Accordingly, although the local rule was not complied with strictly, this Court declines to exclude the exhibits on this basis.

### Failure to Serve

Although the declaration of Luis Arceo is mentioned in the memorandum and statement of undisputed facts, that document was not filed with the Court or otherwise served on National Surety. Because the document was not filed, and was not served on National Surety, this Court shall not consider any alleged facts that declaration purported to establish. *See* Fed. R. Civ. P. 6(c)(2); Local Rule 134.

### Unauthenticated Exhibits

National Surety contends that this Court should reject all of Plaintiffs' exhibits as unauthenticated. All of Plaintiffs' exhibits were filed as exhibits to the declaration of Plaintiffs' counsel Richard Hamlish. National Surety submits that the Hamlish declaration failed to comply with Local Rule 142(a)(1) and that therefore none of the exhibits is admissible.

The Hamlish declaration is required to identify the "the party or parties on whose behalf it is submitted, and the motion to which it pertains." Local Rule 142. The Hamlish declaration fails to identify clearly the party or the motion. The declaration identifies neither the parties he represents nor the motion explicitly. In addition, Mr. Hamlish's signature bears a date that is almost two years old and identifies Mr. Hamlish as counsel to non-parties Sona Vartanian and Pacific Marine Center, Inc.[6] Based on his signature, then, it appears that the declaration was prepared in association with a different action. There is some indication, however, that this declaration is associated with this action and motion. First, the declaration was filed on the docket in this action. Second, the declaration refers to 42 exhibits and seven declarations. Thus, the declaration correctly identifies the amount of declarations and exhibits filed in this action and this motion. Considering these facts and the absence of prejudice, this Court declines to reject all of Plaintiffs' exhibits on this basis.

Next, National Surety contends that all exhibits are inadmissible because the Hamlish declaration fails to authenticate any of the exhibits. National Surety argues that the Hamlish declaration fails to authenticate each of the exhibits and fails to provide sufficient testimony to support a finding that he has knowledge that each exhibit is what he claims it to be. Mr. Hamlish attempts to authenticate the exhibits by declaring that he has "received each of [the 42] exhibits by either one of two methods: my clients and through discovery from opposing counsel." Hamlish Decl. ¶4. Mr. Hamlish "certif[ies] each exhibit is a true copy of the document submitted to" him. *Id*. Mr. Hamlish further declares that he has "spoken to each declara[nt] and the declaration reflects their recollection of the events in this matter." *Id*. at ¶5. Mr. Hamlish explains that he was "present at all of the depositions in this matter and certif[ies] that the excerpts are correct[.]" *Id*. at ¶3. Although these statements fail to identify each exhibit individually, the declaration does authenticate the exhibits. In addition, National Surety fails to call into doubt the exhibits, particularly where, as here, it has submitted most of these same exhibits in opposition to Plaintiffs' motion. Accordingly, this Court declines to reject all of Plaintiffs' exhibits on these grounds.

### Untimely Filed Exhibits

About one-third of Plaintiffs' exhibits were filed in an untimely manner. The dispositive motion

---

[6]Plaintiffs' counsel represented these non-parties in a separate action in a jury trial before this Court last year.

cut-off date was July 2, 2012.  On that date, Plaintiffs filed their memorandum, statement of facts, and some exhibits.  Between July 2, 2012 and July 13, 2012, Plaintiffs continued to file exhibits on the docket, untimely, without explanation and without seeking leave to file the documents.  Those late exhibits include Exhibits 1-3 (portions of the Rock Taco policy), 20 (the denial letter), 26, 27, 31, 33, 39, and 43-45.

Mr. Hamlish submits a declaration to explain that he had difficulty filing the exhibits to this motion and that, with the help of this Court's help desk, finalized the filing of the exhibits on July 3-11, 2012.  Mr. Hamlish does not explain why he failed to contact this Court or seek leave to file the documents after the deadline to do so had expired.

Although Mr. Hamlish provides no good cause for filing the documents in an untimely manner, this Court notes that there is no prejudice to National Surety.  All of the untimely documents were filed at least two weeks prior to when the opposition was due.  Accordingly, this Court finds that an appropriate sanction is to ADMONISH Mr. Hamlish that any further failures to comply with this Court's orders or local rules shall result in an order to show cause why sanctions should not be imposed.

**Effect of Excluded Exhibits on Motion**

National Surety asserts that Plaintiffs' motion fails because of the inadmissibility of the exhibits submitted.  Specifically, National Surety argues that Plaintiffs have failed to establish an essential element of their breach of contract claim, because they failed to establish the existence of a contract. In this Fed. R. Civ. P. 56 motion, Plaintiffs, as the moving parties, have the burden to prove the elements of their breach of contract claims.  To establish a breach of contract claim, Plaintiffs must prove (1) the existence of a contract, (2) a breach of the terms of the contract, and (3) damages proximately caused by that breach. *Hamilton v. Greenwich Investors XXVI, LLC*, 195 Cal. App. 4th 1602, 1614 (2011). National Surety argue that because Plaintiffs failed to submit a timely contract between it and Rock Taco and submitted no contract between it and Zone Sports, Plaintiffs have not established the existence of a contract between the parties.

As discussed above, Plaintiffs filed portions of the Rock Taco policy as exhibits 1 and 2 over one week late.  They filed no policy related to Zone Sports.  Nevertheless, there is circumstantial evidence presented through admissible evidence that there is a contract.  In addition, National Surety presented

1   the relevant contracts in opposition, and there is no serious dispute that the insurance contracts existed.

2   Accordingly, this Court declines to deny Plaintiffs' summary adjudication motion solely on these

3   grounds.

4                                    **Merits of Plaintiffs' Arguments**

5          Although unclear in the moving papers, which include issues outside of those framed below,

6   Plaintiffs clarify that the focus of this summary adjudication is on the following four issues only: (1)

7   Whether National Surety's refusal to pay the claims of Rock Taco and Zone Sports was a breach of

8   contract; (2) Whether National Surety breached the contract when it failed to consider, investigate and/or

9   pay Rock Taco or Zone Sports for their loss of business income claims; (3) Whether National Surety

10  failed to give assistance to Plaintiffs to mitigate the losses;  and (4) Whether National Surety failed to

11  adhere to its own Property Claims Handling Manual. Reply, p. 3.  The Court considers each issue below.

12            **Whether National Surety's Refusal to Pay Breached the Insurance Contracts**

13         Plaintiffs argue that National Surety breached the insurance contracts by failing to pay the claims.

14  In this motion, Plaintiffs dispute each of the eight "inconsistencies" National Surety cited and relied on

15  to support denial of Plaintiffs' insurance claims.  Plaintiffs argue that, based on the undisputed facts,

16  either there is no inconsistency or that the inconsistency is irrelevant.  On these bases, Plaintiffs seek

17  summary adjudication that National Surety breached the contract of insurance by failing to pay the

18  claims.

19         National Surety disclaimed Plaintiffs' insurance claims because it concluded that the insurance

20  claims were based on misrepresentations of material fact.  Pursuant to the California Insurance Code,

21  an "entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or

22  misrepresented any material fact." Cal. Ins. Code §2071.  A "material" fact is one that "concerns a

23  subject reasonably relevant to the insured's investigation, and if a reasonable insurer would attach

24  importance to the fact misrepresented[.]" *Cummings v. Fire Ins. Exch.*, 202 Cal. App. 3d 1407, 1417

25  (1988).  To properly void a policy pursuant to this statute, an insurer need not prove an intent to deceive;

26  rather, such intent is inferred if the insured knows the statement is false and willfully makes it. *Id.* at

27  1416.

28         Both the Rock Taco Policy and Zone Sports Policy language similar to this statute.  The Rock

Taco Policy provides:

> A.    Concealment, Misrepresentation or Fraud
> This Coverage Part is void in any case of fraud by you.  It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
>> 1.    This Coverage Part;
>> 2.    The Covered Property;
>> 3.    Your interest in the Covered Property; or
>> 4.    A claim under this Coverage Part.

Rock Taco Policy, Def. Exh. A, p. 25.  Zone Sports' Policy contains nearly identical language to void the policy in the event that the insured makes a material misrepresentation.  The policy language reads, in relevant part:

> C. Concealment, Misrepresentation or Fraud
> This policy is void in any case of fraud by you at any time as it relates to the policy.  It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
>> 1.    This policy;
>> 2.    The Covered Property;
>> 3.    Your interest in the Covered Property; or
>> 4.    A claim under the policy.

Zone Sports Policy, Def. Exh. B, p. 11.

As set forth above, National Surety concluded that based on, but not limited to, eight identified inconsistencies, both the Rock Taco and Zone Sports Policies were void based on the Concealment, Misrepresentation or Fraud provision in each policy.  Plaintiffs not only dispute those inconsistencies, but argue that–as a matter of law–National Surety breached the insurance contract by failing to pay because there were no material inconsistencies.  For the foregoing reasons, this Court finds that National Surety successfully and clearly demonstrates that genuine issues of material fact preclude summary adjudication of Plaintiffs' claims.

*Inclusion of Removed Items in Sworn Statement*

In the denial letter, National Surety set forth as the sixth inconsistency: "As indicated above, the Sworn Statement in Proof of Loss for $138,172.28 included equipment that had been repossessed by Paul Binder in December 2008."  National Surety submits that the primary misrepresentation is Mr. Barbis' inclusion in his Rock Taco insurance claim of over $10,000 worth of electronic equipment that was removed by CME or Mr. Binder in December 2008 and that the policy was void on this basis alone.

Plaintiffs argue that the equipment taken by Mr. Binder in December 2008 was not repossessed,

but was stolen by Mr. Binder without authority or the knowledge of Mr. Barbis.  Although Plaintiffs admit that they "withheld a large sum of money" from CME, and that Rock Taco and Mr. Binder argued over whether or not Mr. Binder could take equipment to satisfy the debt, Plaintiffs maintain that Mr. Binder had no security interest in the equipment and had no authority to remove it.  Plaintiffs concede that Mr. Binder did take some lighting equipment in December 2008 with Rock Taco's consent and knowledge, but that equipment was not listed in the Sworn Statement.[7]  Plaintiffs contend that there is no "inconsistency" because Rock Taco did not know that the equipment was taken in December 2008. Moreover, Plaintiffs assert that the alleged inconsistency is the result of Mr. Binder giving false information to National Surety, not Mr. Barbis or Rock Taco.

National Surety submits that Plaintiffs' statements are false.  National Surety provides a December 17, 2008 email between Mr. Binder, Mr. Barbis, and Mr. Barbis' other Rock Taco partners. That email includes the manufacturer, model, price, and quantity of each item that would be taken by Mr. Binder of CME to reduce Rock Taco's debt to CME.  With the exception of an Apple TV, the exact items identified in the email appear on the second page of the HPL Invoice.  That invoice was included as part of Rock Taco and Zone Sports' Sworn Statement.  The email contains evidence that the parties had agreed on the arrangement.  Specifically, Mr. Binder and Mr. Young agreed to the arrangement.  Mr. Young of Rock Taco replied to Mr. Binder's email, asked follow-up questions about the removal of additional items from the Cantina. Mr. Barbis' email address was included in the email as was Mr. Benjamin.  Mr. Barbis, Mr. Young, and Mr. Benjamin and business partners in Rock Taco and Zone Sports.  Moreover, although Mr. Barbis denied knowledge of the repossession in his EUO, Mr. Barbis admitted in his deposition that he had seem "something similar" to the December 17, 2008 email.

In reply, Plaintiffs argue that no genuine issue of material fact is disputed because "[n]o reasonable juror would believe the testimony of Paul Binder." Reply, p. 4.  Although Plaintiffs attempt to discredit Mr. Binder and his testimony, a determination of his credibility is a question of fact to be determined by the fact-finder, not a question of law. *Berzon v. U.L.C. Corp.*, 274 Cal. App. 2d 690

---

[7]While conceding in their opening memorandum that Mr. Binder took some lighting equipment on December 21, 2008, in Plaintiffs' reply memorandum evidence shows that Mr. Binder took, in addition to lighting equipment, Sammy Hagar's gold records, since the Hagar franchise license had been terminated that month by order of a different court.

1    (1969) (determination of credibility of witnesses is exclusively the province of the trial court).

2    Moreover, "the issue of whether in insured's false statement was knowingly and intentionally made with

3    knowledge of its falsity and with intent of defrauding the insurer is a question of fact." *Cummings*, 202

4    Cal. App. 3d at 1417.  The evidence provided by National Surety raises genuine issues of material fact

5    as to whether Rock Taco and Zone Sports knowingly included false information in the insurance claims

6    to void the insurance contracts.  Additionally, the ultimate question of whether National Surety breached

7    the contract based on the disputed evidence is a question of fact.  *See Palmiero v. Spada Distributing*

8    *Co.*, 217 F.3d 561, 565 (9th Cir. 1956) (question of breach of contract is a question of fact to be left to

9    the trier of fact).  Because the evidence presented establishes questions of material fact as to whether

10   there was a material misrepresentation to avoid the insurance contracts, and because the ultimate

11   question of whether the contract was breached is question of fact, this Court must deny summary

12   adjudication as to Plaintiffs' breach of insurance contract claims.

13                                          *Other Questions of Material Fact*

14           Plaintiffs have failed to establish that no questions of material fact exist as to any of the asserted

15   inconsistencies related to its breach of insurance contract claim.  Although the issue submitted for

16   adjudication is denied on the basis of the disputed inclusion of the items taken by Mr. Binder alone,

17   National Surety has submitted evidence support its position on each of the identified inconsistencies.

18   This evidence opposes successfully Plaintiffs' arguments to defeat this motion fully.  These further

19   questions of material fact include, but are not limited to, the following:

20           There is a genuine issue of material fact as to whether Plaintiffs misrepresented their interest in

21   the claimed property.  One if the inconsistencies identified related to whether or not Plaintiffs

22   misrepresented that no other entity had any interest in the items identified in the Sworn Statement.

23   Plaintiffs maintain that no other party had any interest in the items, including Mr. Binder or CME.

24   National Surety submits evidence that CME retained a monetary interest up to the unpaid amount in the

25   equipment it installed.  Plaintiffs argue in reply that it is undisputed that CME had no interest in the

26   equipment, because the evidence establishes that Rock Taco paid fully for the equipment, but withheld

27   payment on the installation alone.  Based on the evidence presented, whether CME retained an interest

28   in the items alleged to have been stolen, whether Plaintiffs misrepresented that fact, and whether the

misrepresentation was intentional remain disputed facts.

Genuine issues of material fact exist as to whether the copper doors were damaged. Zone Sports insurance claim was based, in part, on the alleged damage to the copper doors. Plaintiffs contend that there is no question that the copper doors were damaged. Plaintiffs argue that Mr. Buchbinder never saw the copper doors. Mr. Buchbinder, however, did a "cursory walk-around of the premises" and did not notice the damage to the doors that was described by Mr. Barbis to have been significant ("dented and dramatically bent"). Plaintiffs' contractor Manual Marin ("Mr. Marin") did provide an estimate of what it would cost to replace or repair the damaged doors. However, Mr. Marin never produced photographs of the damaged doors to National Surety despite requests to provide them. Mr. Marin explained that he would not retrieve the photographs off of his cell phone, his wife would be able to do so, and that he would provide the photographs at a later date. He never provided the photographs of the alleged damage to the copper doors. Based on the facts that Mr. Buchbinder did not see damage to the doors, and Mr. Marin failed to produce photographic evidence of the damaged doors[8], questions of fact remain as to whether the copper doors were damaged.

Whether or not the damage to the interior of the Cantina was caused by the repossession or alleged burglary is a material, disputed question of fact. Plaintiffs contend that the damage to the interior of the Cantina was caused by thieves. Plaintiffs support this position by citing to Mr. Auvinen's testimony that no one from National Surety investigated the interior of the Cantina. National Surety's disclaimer letter provides its position that the damages "appears to have resulted from the repossession and/or removal of the equipment in December 2008." This position is supported by Mr. Binder's deposition testimony that damage occurred during the repossession of the equipment. This testimony creates a genuine issue of material fact as to what caused the interior damage to the Cantina.

Questions of fact remain as to inconsistencies between the police report and Mr. Barbis' statements. The denial letter identified two inconsistencies between the police report and Mr. Barbis'

---

[8] Plaintiffs argue that Mr. Marin's failure to produce the photographs is not a material misrepresentation. Plaintiffs' position misses the point. National Surety submits that the material misrepresentation is that the copper doors were damaged. Mr. Marin's failure to provide photographic damage that the doors were damaged tends to prove National Surety's position that Plaintiffs' misrepresented that material fact. Viewing the evidence in a light most favorable to the non-moving party, as it must, this evidence precludes summary adjudication on this issue.

statements in his EUO. First, according to the Fresno Police Report, Mr. Barbis made a statement to the reporting officer Michael Buchbinder; Mr. Barbis testified during his EUO that he did not recall ever speaking to Officer Buchbinder. Second, according to the Fresno Police Report, Mr. Barbis advised Officer Buchbinder that the alarm on the building did not work; Mr. Barbis testified during his EUO that he did not recall whether the security system was working at the time of the theft. Plaintiffs now explain that these inconsistencies can be explained by National Surety's failure to contact Mr. Barbis for 275 days. That position is unsupported by the cited evidence and is contradicted by the evidence presented by National Surety. In addition, the passage of time does not resolve the inconsistent statements conclusively. Plaintiffs further argue these alleged inconsistencies are immaterial. Whether or not this inconsistency is material is a question of fact. *Cummings*, 202 Cal. App. 3d at 1417 (materiality is a mixed question of law and fact that can be decided as a matter of law if reasonable minds could not disagree on the materiality of the misrepresentations).[9]

The date of the alleged theft is an unresolved question of fact. According to the Sworn Statement, the alleged theft occurred on February 15, 2009. Mr. Barbis reported the theft to the Fresno police on February 5, 2009. Now there is evidence submitted that the alleged theft occurred sometime between January 13 and January 28, 2009.

Finally, there is disputed evidence as to the televisions that were included in the Rock Taco insurance claim. In its denial letter, National Surety explains: "According to the DOI Affidavit, based on interviews with a former restaurant employee and former construction supervisor, some of the televisions included in the Claim were actually given by Mr. Barbis to workers for painting work performed at the closed restaurant." Plaintiffs argue that National Surety failed to interview these witnesses identified in the DOI Affadavit and, therefore, lacks personal knowledge of these facts. Plaintiffs further submit a denial from one of the asserted DOI witnesses. National Surety counters that the alleged denial is inadmissible as evidence. In addition, Plaintiffs do not provide evidence to negate the DOI affidavit. On these facts, questions of material fact remain on this issue.

Because Plaintiffs failed to establish that no questions of material fact remain on these issues,

---

[9]Plaintiffs further fault National Surety for failing to follow up with Mr. Buchbinder in an attempt to resolve the alleged inconsistencies. The adequacy of National Surety's investigation will be addressed below.

1   Plaintiffs motion for summary adjudication as to each of the identified inconsistencies is denied.

**Whether National Surety Breached the Contracts by Failing to Investigate or Pay
the Business Income Claims**

Plaintiffs next argue that National Surety breached the insurance contracts because it failed to investigate their claims.  "The duty of good faith and fair dealing implied in every insurance contract includes a duty on the part of the insurer to investigate claims submitted by its insured." *Safeco Ins. Co. of America v. Parks*, 170 Cal. App. 4th 992, 1003 (2009).  "[A]n insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial." *Id*. (quoting *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d 809, 819 (1979)).  "Ordinarily, an insurer breaches the implied covenant by denying and insured's claim without first thoroughly investigating "'all the possible bases of the claim.'" *Safeco*, 170 Cal. App. 4th at 1006 (quoting *Jordan v. Allstate Ins. Co.*, 148 Cal. App. 4th 1062, 1073 (2007)) (emphasis in original).  "In discharging this duty, the insurer may not ignore evidence which supports coverage.  If it does so, it acts unreasonably towards its insured and breaches the covenant of good faith and fair dealing." *Jordan*, 148 Cal. App. 4th at 1074.  Whether the insurer's investigation was reasonable "must be determined on case by case basis and will depend on the contractual purposes and reasonably justified expectations of the parties." *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 346 (2001).

Plaintiffs argue that National Surety breached the insurance contracts by failing to investigate Rock Taco's and Zone Sports' claim for loss of business income.  On January 28, 2009, Rock Taco claimed loss income in the amount of $2,578,000.00.  On the same day, Zone Sports claimed $6,100,000.00 in lost business income.  Both claims were based on the alleged theft.  Plaintiffs sought an update on the loss of business income claim on Mach 30, 2009, but received none.  Plaintiffs contend that those claims were never investigated and that National Surety denied the claims without ever addressing or executing a good faith investigation as to the merits of the claims.

National Surety counters that it conducted a prompt and thorough investigation of all of Plaintiffs' claims.  As to the investigation of the Plaintiffs' claims for loss of business income, National Surety submits that it conducted a reasonable investigation of those claims because it investigated the underlying issue first of whether there was coverage.  National Surety explains that an insurance

investigation comprises two aspects: coverage and damages.  Mr. Auvinen submits that in cases of serious questions of coverage, such as the instant case, the issue of coverage is investigated before damages are investigated. Auvinen Decl. ¶19.  If the company determines that there is no coverage, based on material misrepresentations of fact, then the company determines that the policy is void.  If the policy is void, there is no coverage for any portion of the claim, whether it relates to the claim for property or the claim for loss of business income flowing from the loss of that property.  National Surety concludes that because questions of fact remain on the issue of coverage, summary adjudication on this issue is denied.

As set forth above, an insurer had a duty to investigate each claim thoroughly and to inquire into all possible bases that might support an insured's claim. *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d 809, 819 (1979).  The critical test is one of reasonableness, evaluating the insurer's investigation in light of the totality of the circumstances surrounding its actions. *Wilson v. 21st Century Ins. Co.,* 42 Cal. 4th 713, 7232 (2007).  The "reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact[.]" *Chateau Chamberay*, 90 Cal. App. 4th at 346.  Reasonableness "becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence." *Id*.

Based on the evidence presented and the applicable legal authority, the reasonableness of National Surety's investigation remains a question of disputed fact.  Questions of fact remain as to whether Plaintiffs were entitled to coverage based on the dispute over whether Plaintiffs made intentional and material misrepresentations of fact to void the policies.  Considering the evidence in a light most favorable to the non-moving party, it was reasonable for National Surety to investigate the issue of coverage first where, as here, National Surety had several red flags noted, including being contacted by law enforcement authorities regarding a criminal insurance fraud investigation that included Rock Taco.  Under these circumstances, National Surety's focus on coverage before attempting to sort out Plaintiffs' loss of business income claims, which amounted to a combined $8,500,000.00, was reasonable.  Accordingly, Plaintiffs summary adjudication motion on this issue is denied.

### Whether National Surety Failed to Assist Plaintiffs to Mitigate Their Losses

Plaintiffs assert that an insurance carrier has a duty to assist its policy holder when a claim is

reported to help the claimant mitigate his damages and reduce the amount of the claim.  Plaintiffs argue

that National Surety breached its contract of insurance when it failed to assist them to mitigate their

losses.  Plaintiffs maintain that the copper doors at the tower entrance had to be secured with a chain

because National Surety refused to honor the claim and purchase a new lock for the doors.  Plaintiffs

further submit that National Surety breached its contract by failing to assist Rock Taco is obtaining an

inventory of its missing items.

National Surety points out that under the policies, Rock Taco and Zone Sports had the duty to

mitigate their damages and prepare their own inventory of lost items, not National Surety.  The Rock

Taco Policy includes the following provision which required Rock Taco to mitigate damages and

provide an inventory of lost items:

> 3.   Duties in Event of Loss or Damage
> ...
> d.   Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss.  If feasible, set the damaged property aside and in the best possible order for examination.  Also keep a record of your expenses for emergency and temporary repairs, for consideration in settlement of the claim.  This will not increase the Limit of Insurance.
> e.   At our request, give us complete inventories of the damaged and undamaged property.  Include quantities, costs, value and amount of loss claimed.

Def. Exh. A, pp. 18-19.  The Zone Sports Policy contains similar language:
> 3.   Duties in Event of Loss or Damage
> a.   You must see that the following are done in the event of loss or damage to Covered Property:
> ...
> (4)   Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss.  If feasible, set the damaged property aside and in the best possible order for examination.
> ...
> (6)   Permit us to inspect the property proving the loss or damage.
> ...
> Also permit us to examine your books and records and to make copies of your books and records proving the loss or damage.

Def. Exh. B., p. 30.  National Surety argues that pursuant to these Policy provisions, it was Plaintiffs'

responsibility to secure the copper doors to prevent further loss.

Because Plaintiffs failed to establish that National Surety had a duty to assist them to mitigate

damages, and National Surety had controverted that claim by submitted evidence that it was Plaintiffs'

duty to do so, summary adjudication is denied on this issue.

**Whether National Surety Failed to Adhere to its Property Claims Handling Manual**

Although Plaintiffs identify this as an issue to be determined in their reply brief, this Court cannot determine the focus of this issue. Plaintiffs present no credible arguments or evidence on this issue. Accordingly, summary adjudication is denied on this issue.

**Other Issues Presented by Plaintiffs**

In their moving papers, Plaintiffs address other issues that were not identified in their reply papers as being the focus of this summary adjudication motion. It is unclear whether Plaintiffs concede that disputed questions of fact exist on those issues, whether Plaintiffs have abandoned those issues for other reasons, or whether Plaintiffs expect a ruling on those issues notwithstanding the clear language of the reply brief limited the focus of the motion. In this summary adjudication motion, this Court has considered all arguments, admissible exhibits, and legal authorities presented on the record. Failure by this Court to address specifically an argument, objection, or exhibit should not be construed as a failure to have considered that argument, objection or exhibit. None of the other issues raised by Plaintiffs was meritorious to warrant further discussion.

**<u>CONCLUSION AND ORDER</u>**

For the reasons discussed above, this Court DENIES Plaintiffs' summary adjudication motion in full. The August 14, 2012 hearing on this motion is VACATED. Mr. Hamlish is ADMONISHED that any further failure to obey this Court's orders or local rules shall result in an order to show cause why sanctions should not be imposed.

IT IS SO ORDERED.

23

1   **Dated:    August 8, 2012                          /s/ Lawrence J. O'Neill**
                                                UNITED STATES DISTRICT JUDGE

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28