1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

FRESNO ROCK TACO, LLC, et al.,

                            Plaintiffs,

            v.

NATIONAL SURETY CORPORATION,

                            Defendant.

_____/

**CASE No. 1:11-cv-00845-SKO**

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS AS UNTIMELY**

(Doc. 298)

**ORDER GRANTING PLAINTIFFS' MOTION FOR SANCTIONS**

(Doc. 299)

**ORDER TO SHOW CAUSE**

## I.   INTRODUCTION

This bad-faith insurance action was originally filed by Fresno Rock Taco, LLC ("FRT"), and Zone Sports Center, LLC ("Zone," collectively "Plaintiffs") against National Surety Corporation ("National" or "Defendant") in Fresno County Superior Court on April 20, 2011. The action was removed to this Court on May 23, 2011, pursuant to 28 U.S.C. § 1446 on the

basis of diversity jurisdiction under 28 U.S.C. § 1332.  A jury trial was held, which ended in a mistrial due to a hung jury.

The case was reset for trial to begin on Wednesday, July 31, 2013.  The retrial was vacated due to a legal issue raised by National on July 26, 2013, in a conference held before U.S. Magistrate Judge Stanley A. Boone.  The parties agreed that, to conserve the resources of the jury, the court, and the parties, the retrial should not occur until the judicial estoppel issue raised by National was resolved by the Court.  The Court permitted the parties to submit briefs regarding National's motion to dismiss FRT on judicial estoppel grounds, and Plaintiffs' motion for sanctions against National for raising this legal issue three court days before the July 31, 2013, trial.

For the reasons set forth below, the Court DENIES National's motion to dismiss as untimely, GRANTS Plaintiffs' motion for sanctions in the amount of **$4,334.20**, and ORDERS the parties to show cause why the Bankruptcy Trustee should not be joined as a necessary party pursuant to Federal Rule of Civil Procedure 19.

## II.   BACKGROUND[1]

### A.   Fresno Rock Taco, LLC Litigation History

#### 1.   Facts Giving Rise to Four Civil Actions

Zone Sports Center, LLC ("Zone") is a California limited liability company that owned a real estate project in Fresno, California, called Granite Park.  (Doc. 25, ¶¶ 3, 5.)[2]  Zone's managing member is Milton Barbis.  (Trial Transcript, Doc. 224, p. 223:5-7.)  Fresno Rock Taco, LLC ("FRT") is a California limited liability company that conducted business as the "Cabo Wabo Cantina" (the "Cantina") and as Memphis Blues, which were restaurant/night clubs.  (Doc. 25, ¶¶ 2, 6.)  Milton Barbis is FRT's managing member.  (Trial Transcript, Doc. 224, p. 223:5-7.)

---

[1]The background section is intended to provide a context for the Court's decision and is not intended to have any dispositive effect.

[2] Any docket citation without a case name and number are references to docket entries in this case, *Zone Sports Center, LLC, et al., v. National Surety Corporation,* 1:11-cv-00845-SKO.

In December 2006, FRT entered into an agreement with Red Head, Inc. ("RHI"), a corporation that markets and licenses the intellectual property created by rock musician Sammy Hagar for use in connection with restaurants, nightclubs, and merchandise, to develop a Cabo Wabo Cantina (the "Cantina").  (*Zone Sports Center, LLC, et al., v. Red Head, Inc., et al.* ("*Zone*"), 1:10-cv-1833-AWI (E.D. Cal. Oct. 2010), Doc. 1, ¶ 19.)[3]  FRT then executed a lease with Zone for the premises where the Cantina was to be located in the Granite Park development, and Zone began construction on a building especially for FRT's Cantina restaurant/nightclub.  (*Zone*, 1:10-cv-1833-AWI, Doc. 1, ¶¶ 19, 30, 31.)  The Cantina opened for business on or around August 28, 2008.  (*Zone*, 1:10-cv-1833-AWI, Doc. 1, ¶ 58.)

Disputes, however, arose between FRT and RHI regarding the scope and nature of their agreement.  On December 22, 2008, RHI filed suit against FRT in the U.S. District Court for the Northern District of California, alleging that FRT had breached their agreement by, among other things, failing to pay any royalties and refusing to provide books and records needed to perform audits required by the agreement.  (*Red Head, Inc. v. Fresno Rock Taco, LLC,* ("*Red Head*"), 3:08-cv-5703-EMC, Doc. 1, ¶ 1.)  During the course of that litigation, Milton Barbis filed a declaration stating that he was "the 100% owner of Fresno Rock Taco, LLC."  (*Red Head*, 3:08-cv-5703-EMC, Doc. 23 ¶ 1.)

On December 31, 2008, the court in *Red Head* issued a preliminary injunction effective during the pendency of the action that precluded FRT from displaying any trademark or trade dress that imitates or is confusingly similar to Cabo Wabo trademarks.  (*Red Head*, 3:08-cv-5703-EMC, Doc. 36.)

Apparently as a result of the litigation with RHI, FRT elected to convert the Cantina into a restaurant/club called Memphis Blues.  (*See* Doc. 25, ¶ 6.)  Between January 12, 2009, and February 5, 2009, the restaurant/nightclub was not open for business.  During this time frame, an alleged theft occurred at the Cantina, and a police report was filed on or around February 5, 2009, indicating that, among other things, electronic equipment including televisions and

---

[3] This case was transferred from this Court to the Northern District of California on February 7, 2011, and was assigned case number 3:11-cv-00634-JST.  The complaint was amended several times while the action was pending before the Northern District.

speakers were missing.  (Doc. 25, ¶¶ 12, 14.)  There was also an allegation of property damage.  (Doc. 25, ¶ 11.)  Subsequently, FRT and Zone tendered a claim to their insurer, National Surety Corporation, for a theft-related loss.  (Doc. 25, ¶¶ 19, 20.)

In March 2009, the *Red Head* litigation between RHI and FRT was settled pursuant to a confidential agreement; on March 20, 2009, a stipulated judgment was entered along with a permanent injunction barring FRT and its agents from using or selling RHI's trademarks and other intellectual property.  (*Red Head*, 3:08-cv-5703 EMC, Doc. 51.)

Meanwhile, the California Department of Insurance and the City of Fresno were conducting an investigation of purported fraud related to several businesses located at the Granite Park development, including FRT, Zone, and The Fine Irishman.  (*See generally Fresno Rock Taco, LLC et al.  v. Rodriquez, et al.* ("*Rodriquez*"), 1:11-cv-622-LJO-SKO, Doc. 9.)  As a result of the investigation, on May 28, 2009, the business locations of FRT, Zone, and The Fine Irishman, as well as the home of Milton Barbis, were searched by law enforcement pursuant to a search warrant.  (*Rodriquez*, 1:11-cv-622-LJO-SKO, Doc. 9, ¶¶ 17-23.)

## 2. Milton and Heidi Barbises' Bankruptcy Proceedings and Subsequently Filed Civil Actions

On October 30, 2009, Milton and Heidi Barbis filed a Chapter 7 bankruptcy petition.  (*In re Milton Barbis*, CAEB, 1:09-bk-60548, Doc. 1.)  The petition listed the debtor as Milton Peter Barbis, doing business as Granite Park Professional Center, LLC, Sphere Properties, LLC, Granite Park Food and Beverage, Inc., Fresno Rock Taco, LLC, The Public House Fresno, LLC, JEG Ventures, LLC, ECCO Food and Entertainment, LLC, The Zone Sports Center, LLC, and the Brick Oven Investors, LLC.  Heidi Barbis was listed as the joint debtor.  (*In re Milton Barbis*, 1:09-bk-60548, Doc. 1.)

Schedule B of the bankruptcy petition indicates that Milton Barbis had a 25% interest in 9 separate companies, including FRT.  (*In re Milton Barbis*, 1:09-bk-60548, Doc. 1.)  The value of the Barbises' interest in the property, without deducting any secured claim or exemption, was listed as $0.  (*In re Milton Barbis*, 1:09-bk-60548, Doc. 1.)  On line 21, the petition required the debtor to identify "other contingent and unliquidated claims of every nature, including tax

refunds, counterclaims of the debtor, and rights to setoff claims.  Give estimated value of each." (*In re Milton Barbis*, 1:09-bk-60548, Doc. 1.)  Line 21 of the Barbises' petition was marked "none."  (*In re Milton Barbis*, 1:09-bk-60548, Doc. 1.)

On February 4, 2010, the bankruptcy court issued a "Discharge of Debtor" order.  (*In Re Milton Barbis*, 1:09-bk-609548, Doc. 15.)  On that same day, National issued a letter to FRT and Zone denying their claims for insurance coverage.  (Doc. 25, ¶ 26.)  Following the February 4, 2010, bankruptcy discharge order, the Barbises filed several motions to avoid liens of various creditors; the bankruptcy case was formally closed on September 21, 2010, following the issuance of a final decree.  (*In re Milton Barbis*, 1:09-bk-60548, Docs. 16, 29, 42.)

On October 4, 2010, Zone, FRT, and Milton Barbis filed suit against RHI, Sammy Hagar, and others alleging federal and state law claims arising out of the 2006 agreement between RHI and FRT (the "*Zone*" litigation).  (*Zone*, 1:10-cv-01833-AWI, Doc. 1).

On October 20, 2010, the Bankruptcy Trustee ("Trustee") overseeing the Barbises's bankruptcy proceeding, motioned the bankruptcy court to reopen the bankruptcy case, indicating that he was informed and believed that the debtors failed to disclose in their bankruptcy schedules Milton Barbis' interest, as a plaintiff, in a multi-million dollar lawsuit pending in the United States District Court, Eastern District of California.  (*In re Milton Barbis*, 1:09-bk-60548, Doc. 44.)  The bankruptcy case was reopened, and the Barbises filed a motion for reconsideration.  (*In re Milton Barbis*, 1:09-bk-60548, Doc. 48.)  The Barbises asserted that the case the Trustee cited was filed on October 4, 2010, and was not known to the Barbises at the time they filed their petition on October 30, 2009.  At the time their petition was filed, they believed the settlement agreement between RHI and FRT precluded further claims against RHI. (*In re Milton Barbis*, 1:09-bk-60548, Docs. 48-50.)  The Barbises' motion for reconsideration was denied.  (*In re Milton Barbis*, 1:09-bk-60548, Doc. 54.)

On February 7, 2011, the *Zone* litigation was transferred to the Northern District of California as it retained continuing jurisdiction arising out of the original 2008 *Red Head* action. (*Zone*, 1:10-cv-01833-AWI, Doc. 39.)  On April 16, 2011, Milton and Heidi Barbis, their minor daughter Claire Barbis, Zone, FRT, and The Fine Irishman, LLC ("TFI"), filed suit in the U.S.

District Court for the Eastern District of California against the City of Fresno, Detective Rhames, and Detective Rodriquez alleging constitutional violations arising out of the searches conducted on May 28, 2009, at the Zone, FRT, and TFI business locations and the Barbises' residence (the "*Rodriquez*" litigation).  (*Rodriquez*, 1:11-cv-00622-LJO-SKO, Doc. 1.)   On April 20, 2011, FRT and Zone filed the instant lawsuit against National asserting breach of contract and bad-faith denial of an insurance claim, arising out of the January/February 2009 theft at the Cantina restaurant/club location (the "*National*" litigation).

On June 6, 2011, the Barbises' reopened bankruptcy case was closed, while the three separate civil litigations (*Zone*, *Rodriquez*, and *National*) proceeded.  (*In re Milton Barbis*, 1:09-bk-60548, Doc. 79.)  On June 30, 2011, the defendants in the *Rodriquez* case filed motions to dismiss asserting, among other things, that Milton and Heidi Barbis as individuals as well as each of the limited liability corporations ("LLCs"), should be judicially estopped from pursuing their claims due to the Barbises' failure to disclose the claims in their bankruptcy petition.  The plaintiffs responded that the Trustee had examined the *Rodriquez* claims and had determined, for bankruptcy estate purposes, that they had no value and had abandoned them, resulting in the claims re-vesting to the plaintiffs.  The plaintiffs also argued that they were not aware of their potential claims until after they filed bankruptcy petitions.   Additionally, the plaintiffs maintained that, since the LLCs never declared bankruptcy, the LLCs had standing to assert their claims.

On August 9, 2011, the district court determined that the Trustee had abandoned the plaintiffs' claims in the *Rodriquez* action, and all of the plaintiffs therefore had standing to pursue their claims.  Further, judicial estoppel was not applicable because the Bankruptcy Court relied on the Trustee's decision to abandon the claims, not on the plaintiffs' initial assertion that there were no claims.  (*Rodriquez*, 1:11-cv-00622-OWW, Doc. 17, 5:25-11:25.)

On August 31, 2011,[4] *Rodriquez* defendants City of Fresno and Rhames filed a motion for reconsideration of the August 9, 2011, order denying their motion to dismiss.  (*Rodriquez*,

---

[4] The City of Fresno and Detective Rhames filed an ex parte motion for reconsideration on August 9, 2011, which was refiled as a regularly noticed motion on August 31, 2011.

1:11-cv-00622-LJO-SKO,[5] Doc. 24.)  The defendants asserted that the court had been misled by misrepresentations of the plaintiffs' counsel about what claims had actually been disclosed to the Trustee and abandoned.

 While that motion for reconsideration was pending, the defendants in the *Zone* case sought to dismiss the plaintiffs' claims, asserting that judicial estoppel precluded the plaintiffs from bringing their claims because Mr. Barbis had failed to disclose them in his bankruptcy proceeding.  (*Zone*, 3:11-cv-634-JSW, Docs. 14, 16, 56.)  In a September 1, 2011, order, the court found that the Barbises' bankruptcy case had been reopened and the Trustee was given an opportunity to administer the unscheduled claims.  As such, the court determined that Mr. Barbis' inconsistent positions were remedied and he was not judicially estopped from litigating his claims in the *Zone* case.  (*Zone*, 11-cv-634-JSW, Doc. 86; *see also* 2011 WL 3862007, at *3 (N.D. Cal. Sept. 1, 2011).)

 On November 1, 2011, the *Rodriquez* Court granted in part and denied in part the defendants' motion for reconsideration.  (*Rodriquez*, 1:11-cv-00622-LJO-SKO, Doc. 35.)  The Court concluded that notwithstanding whether the Trustee had actually abandoned the claims that were the subject of the *Rodriquez* action rather than the *Zone* action, the claims were never properly disclosed to the creditors, and thus could not be deemed abandoned.  As it pertained to Milton and Heidi Barbis, their claims were barred by judicial estoppel, and they were dismissed from the suit.  The court then addressed the standing of the LLCs (FRT, Zone, and TFI) to assert their claims in *Rodriquez*:

> One issue remains.  Only Milton and Heidi Barbis filed for bankruptcy.  Defendants argue that, like Milton and Heidi Barbis, Fresno Rock Taco, LLC, Zone Sports Center, LLC, and the Fine Irishman, LLC (the "LLC Plaintiffs") should be judicially estopped from bringing the present claims in this Court.  *See* Doc. 15 at 5-6.  The Bankruptcy Docket indicates Milton Barbis was "doing business as" all three LLC Plaintiffs.  *See* 1:09-bk-60548 Docket.  In addition, Plaintiffs admit that the Barbis' bankruptcy petition listed the three LLC Plaintiffs as assets of the estate with "No Cash Value."  Doc. 13 at 5.  Although

---

[5] *Rodriquez* was reassigned to U.S. District Judge O'Neill following the retirement of Senior District Judge Oliver W. Wanger.

> <u>Milton and Heidi Barbis</u> would arguably be judicially estopped from asserting claims on behalf of the LLC Plaintiffs because the Barbis[] failed to amend their own bankruptcy schedules to indicate that the LLC Plaintiffs possessed a potentially valuable asset (the claims in this case), Defendants provide no legal authority to support an extension of judicial estoppels to the LLC Plaintiffs themselves. According to their bankruptcy petition, *see* 1:09-bk-60548 Doc. 1 at Schedule B, Milton and Heidi Barbis control only 25% of the stock in each of these LLCs. (Presumably, others hold the remaining 75% interest). The LLCs, which arguably have independent standing to bring Section 1983 civil rights claims, *see Club Retro, LLC v. Hilton*, 568 F.3d 181, 196 (5th Cir. 2009), themselves made no representations in the bankruptcy court and therefore are not *per se* judicially estopped from bringing the claims in this case by virtue of Milton and Heidi Barbis' conduct. This ruling is without prejudice to a Federal Rule of Civil Procedure 56 challenge to the LLCs' standing based on a more complete record.

(*Rodriguez*, 1:11-cv-00622-LJO-SKO, Doc. 35, 10:12-11:5.)

Less than two weeks later, on November 11, 2011, the Barbises filed a motion to reopen their bankruptcy case. (*In re Milton Barbis*, 1:09-bk-60548, Doc. 80.) They acknowledged that they failed to disclose in their bankruptcy schedules their interest as plaintiffs in the *Rodriquez* action. As a result of the Barbises' motion, the bankruptcy case was reopened on November 18, 2011. (*In re Milton Barbis*, 1:09-bk-60548 Doc. 82.)

On February 10, 2012, the Trustee submitted a motion to compromise the Barbises' claims in the *Rodriquez* action. (*In re Milton Barbis*, 1:09-bk-60548 Doc. 95.) In relevant part, the Trustee submitted the following statement:

> 5.     Trustee, the City of Fresno (obo Brendan Rhames), and the State of California (obo Ben Rodriguez) are desirous of resolving the controversy without resorting to a lengthy and costly court proceeding as to the alleged claims of the debtor; and, as such, the City of Fresno has offered $10,000 and the State of California has offered the sum of $10,000 to settle all claims of the debtors (held in their name directly) and to settle all claims of the debtors held (indirectly) through entities of the debtors (namely Fresno Rock Taco, LLC; Zone Sports Center, LLC; and, The Fine Irishman, LLC).

> 6.     As to interests held indirectly the estate makes no warranties; however, any interest (if any) of the debtors in these causes of action held by those entities, as against the settling parties, are being transferred/settled through this compromise.

(*In re Milton Barbis*, 1:09-bk-60548, Doc. 95, ¶¶ 5-6.)

On February 29, 2012, the Barbises filed an objection to the Trustee's motion to compromise their claims in *Rodriquez*, asserting that the actual value of the claims was much higher than the $20,000 settlement amount, and therefore settlement was not in the best interest of the estate.  (*In re Milton Barbis*, 1:09-bk-60548, Doc. 101.)  The Barbises also objected that the Trustee's motion was seeking to settle the claims not only as to the debtors, but also as to all of the entities owned by the debtor.  The Barbises argued that the Trustee had no authority to attempt to settle the claims on behalf of the entity LLCs.

On March 5, 2012, the City of Fresno filed a statement in support of the Trustee's motion to compromise.  (*In re Milton Barbis*, 1:09-bk-60548, Doc. 105.)  In response to the Barbises' assertion that the Trustee was attempting to settle the claims of the plaintiff LLC entities in *Rodriquez*, the City maintained that the only interests of the LLC entities being settled were those portions of the LLCs owned by the debtors.  The City of Fresno noted that, to the extent that some other individual or entity had some interest in the LLCs, "those LLCs remain[ed' viable parties to the surviving portions of the underlying lawsuit."  (*Id.,* Doc. 105, 6:19-7:9.)

On March 8, 2012, the Trustee filed a reply to the Barbises' objections indicating that the Barbises' assertion regarding the sale of claims by entities owned by the debtor misstated the subject of the compromise.  (*In re Milton Barbis*, Doc. 106.)  The Trustee maintained that paragraph 6 of his motion (*see id.*, Doc. 95 ¶ 6) stated that no warranties were being made as to the indirect ownership interests being sold.

On March 15, 2012, the bankruptcy court issued an order approving the settlement of the claims in the *Rodriquez* case:

> After reviewing the Motion, the file, and the evidence presented, the Court hereby . . . ORDERS, ADJUDGES AND DECREES that the settlement of the controversy in the civil suit, known as USCD Case No. 1:11-cv-0622 OWW SKO in the Eastern District of California, and the above-referenced debtors estate, is hereby approved under the terms and conditions set forth in the Trustee's Motion for Order Approving Compromise of Controversy.  Settlement is as to the complete interest of the debtors in the above noted suit and the estate's interest, if any, in the suit as held by the other named plaintiffs in which the bankruptcy estate owns an ownership interest as of this date.

(*In re Milton Barbis*, 1:09-bk-60548, Doc. 109, 1:19-2:4.)

On May 2, 2012, like the defendants in *Zone* and *Rodriguez*, National filed a motion in this case asserting that Zone and FRT were judicially estopped from asserting their claims against National due to Milton Barbis' failure to list FRT and Zone's tendered insurance claim on his bankruptcy petition. (Docs. 34, 35.)  Zone and FRT responded that neither their debts had been discharged in bankruptcy, nor were they the alter egos of Mr. Barbis.  Zone and FRT maintained that, if they prevailed in their action against National, the proceeds would be subject to judgments outstanding against Zone and FRT as well as subject to other debts of Zone and FRT; in sum, Mr. Barbis would receive none of the proceeds of this action if Zone and FRT prevailed. (Doc. 41.)  Additionally, Zone and FRT noted that Zone is not wholly owned by Mr. Barbis, and although Mr. Barbis is FRT's sole member, there were other investors in FRT. (Doc. 41.)

On May 25, 2012, the Court denied National's motion stating the following:

> [National] fails to establish application of judicial estoppel to plaintiffs. [National] provides no authority to support that Mr. Barbis' chapter 7 bankruptcy representations judicially estop the claims of plaintiffs, corporate entities in which Mr. Barbis has limited interests.  [National] relies on authorities involving a debtor's claims, not claims of corporate entities separate from the debtor.  Mr. Barbis is the bankruptcy debtor, not plaintiffs.  Mr. Barbis' purported knowledge of claims would be relevant if he pursued them as plaintiff.  He does not. Plaintiffs are not subject to judicial estoppel because any position asserted in Mr. Barbis' bankruptcy is imputed to him and is not inconsistent with plaintiffs' positions in this action.

(Doc. 48, 9:3-9.)

On September 5, 2012, National filed a "Notice of Related Case" in this case and in *Rodriquez*. (Doc. 117.)  National stated that FRT and Zone were seeking the same damages for lost earnings in each case, and that "[h]aving separate trials would result in a duplication of effort and [would result in a waste of] judicial resources." (Doc. 117, 2:2-3.)  On September 7, 2012, the Court issued an order relating this case to *Rodriquez*.[6]  On October 1, 2012, Milton

---

[6] No motion to consolidate the cases was ever filed.

Barbis was deposed in the *Rodriquez* case. In relevant part, he provided the following testimony under oath:

> Q [Mr. Praet]: All right. So you have an understanding of members or shareholders. Are there any other members or shareholders of Fresno Rock Taco?
> A [Milton Barbis]: No.
> Q: Were there ever any other members or shareholders of Fresno Rock Taco?
> A: No.
> Q: So you were the 100 percent sole owner?
> A: I was the sole member who owned 100 percent of the company.

(*Rodriquez*, 1:11-cv-00622-SKO, Doc. 55-4, p. 3; Barbis Depo., p. 16:2-14.)

This case (*National*) was set for an October 30, 2012, trial, but on October 23, 2012, the trial was continued to April 23, 2013. On February 6, 2013, the April 23, 2013, trial was vacated and eventually reset for May 7, 2013. (Doc. 178.)

While the parties were awaiting trial in this case, on January 11, 2013, the City of Fresno and Rhames filed a motion for summary judgment in *Rodriguez*. (*Rodriguez*, 1:11-cv-00622, Doc. 55.) Among other issues, these defendants asserted again that the LLC plaintiffs (Zone, FRT, and TFI) were precluded from asserting their claims in *Rodriguez* because those claims had not been disclosed during the course of the Barbises' bankruptcy proceedings, or the bankruptcy proceedings of the other LLC's principals. In support of their motion, the defendants cited to Milton Barbis' October 1, 2012, deposition testimony indicating that he was the sole member and 100 percent owner of FRT, while his bankruptcy petition stated he was only a 25 percent owner of FRT. In opposition to the defendants' motion, Mr. Barbis filed a declaration stating "I did not own 100% of FRT. I owned 100% of the equity capital but other investors owned 90% of the total capital investment. I owned only 10% of the total capital." (*Rodriguez*, No. 1:11-cv-00622-SKO, Doc. 58-6, Barbis Decl., ¶ 39.) On March 6, 2013, the court in *Rodriguez* issued an order on the defendants' motion judicially estopping FRT and TFI from asserting their causes of action in the *Rodriguez* case:

> Here, Fresno Rock Taco and The Fine Irishman are judicially estopped from asserting their causes of action in the instant case because the undisputed facts show that each is wholly owned by individuals that filed for bankruptcy and did not disclose the causes of action. Mr. Barbis' deposition testimony and a

declaration prepared for a case in the Northern District [footnote omitted] provides that Mr. Barbis is the sole owner of Fresno Rock Taco. (Doc. 55-4, p. 3, RT p. 16; Doc. 55-16, p. 5). Mr. Barbis filed for bankruptcy and did not disclose the causes of action brought by Fresno Rock Taco in the instant case to his creditors. Thus, Fresno Rock Taco is judicially estopped from pursuing its claims in this Court. *See Hamilton*, 270 F.3d at 783. Mr. Barbis' declaration provides that he did not own 100% of Fresno Rock Taco, he "owned 100% of the equity capital but other investors owned 90% of the total capital investment." (Doc. 58-6, p. 6 ¶ 39). The fact that Mr. Barbis owned 100% of the equity in the company shows that he was the sole owner of the company.

With regard to The Fine Irishman, the company's response to the City's interrogatories provide that John Benjamin is the sole owner of the company. (Doc. 55-5, p. 3:1-6). Mr. Benjamin did not disclose the instant claims in his bankruptcy petition nor is there any evidence to show that he disclosed the instant claims to his creditors. Thus, The Fine Irishman is judicially estopped from asserting its claims in this court. *See Hamilton*, 270 F.3d at 783. The Fine Irishman argues that the fact Mr. Benjamin did not disclose its current claims to Mr. Benjamin's creditors is not relevant because Mr. Benjamin filed for bankruptcy, not The Fine Irishman. (Doc. 58-1, p. 2). It is true that Mr. Benjamin filed for bankruptcy and not The Fine Irishman however, because Mr. Benjamin is the sole owner of the company he should have disclosed the fact that The Fine Irishman possessed a potentially valuable asset, the claims in this case. Accordingly, defendants' motion for summary judgment on the claims brought by Fresno Rock Taco and The Fine Irishman is GRANTED.

With regard to Zone Sports Center, there is a genuine dispute as to whether it is judicially estopped from bringing its claims. It is undisputed that Sphere Properties owns 89.79% of Zone Sports Center and that Granite Park Investors owns the other 10.21%. (Doc. 58-1, p. 3 ¶ 7, 11). It is further undisputed that Mr. Barbis owns 22% of Sphere Properties and failed to disclose Zone Sports Center's claims to his creditors when he filed for bankruptcy. It is also undisputed that Mr. Benjamin owns 16.6% of Granite Park Investors and Howard Young owns 12% of the company. It is further undisputed that both Mr. Benjamin and Mr. Young failed to disclose Zone Sports Center's claims to their creditors when they file for bankruptcy. Although it is undisputed that three of Zone Sports Center's owners failed to disclose Zone Sports Center's claims to their creditors when they filed for bankruptcy it is unclear who the other investors are and whether they are judicially estopped from bringing Zone Sports Center's claims. Accordingly, Zone Sports Center is not judicially estopped from bringing its claims in the instant action.

(Doc. 64, 5:6-6:14.)

On April 24, 2013, while the defendants' motion was pending in *Rodriquez*, the twice reopened Barbises' bankruptcy case was once again closed. (Doc. 139.)   On May 7, 2013, this

case (*National*) proceeded to trial, while *Zone*, pending in the Northern District of California, was dismissed for lack of subject matter jurisdiction on May 22, 2013.  (*Zone*, 3:11-cv-634-JSW, Doc. 140.)   During his direct examination during the trial in this case, Milton Barbis provided the following testimony, in relevant part:

> Q [Plaintiffs' Counsel]:  And who were you employed by?
>
> A [Milton Barbis]:  I was the managing member of two companies.
>
> Q:  And what were the two companies?
>
> A:  The Zone Sports Center and Fresno Rock Taco.
>
> Q:  Would you explain, if you can, what managing member means?
>
> A:  It's sort of like the CEO or the chief operating officer of the company.
>
> Q:  The fact that you're the managing member, does that mean you own the company?
>
> A:  Absolutely not.

(*National*, No. 1:11-cv-00845-SKO, Doc. 244, Trial Transcript, Day 1, 223:4-13.)

The jury in this case was unable to reach a unanimous verdict, and a mistrial was declared on May 23, 2013.  The trial was reset for July 31, 2013.  In the interim, each side filed motions to amend the pretrial order, which were addressed by the Court.  No issues with respect to collateral estoppel based upon findings in *Rodriquez* or judicial estoppel were raised at that time.

While the parties were awaiting retrial in this case, *Rodriquez* was set for trial on August 14, 2013.  At the pretrial conference in *Rodriquez*, Plaintiffs asserted that FRT was still a party to that case, despite the March 6, 2013, summary judgment order.  The Court reminded the parties of the March 6, 2013, order regarding judicial estoppel of FRT and TFI, and on July 1, 2013, the plaintiffs filed a motion to certify the March 6, 2013, order for interlocutory appeal.

On July 15, 2013, U.S. District Judge O'Neill, who was the presiding trial judge and had issued the March 6, 2013, summary judgment order, issued an order correcting the March 6, 2013, judgment and that had been issued.  Due to an oversight, although the Clerk of Court had entered judgment on March 6, 2013, pursuant to the Court's order, the order failed to expressly

directed judgment pursuant to Rule 54 (b).[7]   As such, on July 15, 2013, final judgment was entered, pursuant to the March 6, 2013, summary judgment order.  (Rodriguez, 1:11-cv-00622-SKO, Doc. 96.)   As a result of the July 15, 2013, judgment, the Court denied as moot the plaintiffs' motion for certification of an interlocutory appeal.  On July 16, 2013, the plaintiffs filed a notice of appeal as to the July 15, 2013, judgment.  (Rodriquez, 1:11-cv-00622-SKO, Doc. 99.)

On Friday, July 26, 2013, at 3:45 p.m., FRT and Zone, on behalf of the parties, sought an emergency hearing with the Court.[8]   At 4:30 p.m., the parties appeared for a telephonic conference before U.S. Magistrate Judge Boone.[9]   Ultimately, the parties agreed that the July 31, 2013, trial should be vacated so that the issue of FRT's standing to pursue its claims could be addressed.[10]   As a result, the trial was vacated on Friday, July 26, 2013, the jury was called off, and the parties were permitted to file motions regarding the issue of FRT's standing to pursue its claims as well as FRT and Zone's contention that National should be sanctioned for seeking to file an untimely dispositive motion on the eve of trial.

**B.     Prior Sanctions in this Action**

Pursuant to the parties' December 16, 2011, stipulation, the scheduling order in this case was amended, in part, to provide a deadline of April 9, 2012, to disclose experts; dispositive motions were to be filed no later than **July 2, 2012**.  (Doc. 24.)   National failed to make timely and sufficient expert disclosures on or before the April 9, 2012, deadline.  (Doc. 50, 3:14-23.)   On May 31, 2012, in considering National's failure to disclose its experts timely and

---

[7] After the summary judgment was issued, the remaining parties consented to the jurisdiction of the undersigned Magistrate Judge, and the case was reassigned.  (*Rodriquez*, 1:11-cv-00622-SKO, Docs. 66, 67, 68.)

[8] Alerted to the March 6, 2013, summary judgment order in *Rodriquez* by Rodriquez' defense counsel on Tuesday, July 23, 2013, National's counsel conferred with FRT and Zone's counsel on Friday, July 26, 2013, in this case regarding National's intention to file a motion asserting that the March 6, 2013, order had preclusive effect with respect to FRT's standing to assert any claims against National due to the Barbises' failure to disclose the insurance claim on their bankruptcy petition.

[9] The undersigned was unavailable on Friday, July 26, 2013, at 3:45 p.m. when the parties contacted the Court.  Judge Boone made himself available on the parties' representation of an immediate need for judicial intervention.

[10] The parties did not stipulate to the propriety of National's subsequent filing of the motion on July 30, 2013.

sufficiently, the Court amended the scheduling order to extend the expert discovery deadline to August 10, 2012, and allowed Plaintiffs' experts to file supplemental expert reports no later than June 30, 2012.  (Doc. 50, 3:23-4:1.)   As a sanction to remedy National's violation of the scheduling order, the court precluded National "from filing any further dispositive motions in this action." (Doc. 50, 5:20-21.)

**C.**    **National's Current Motion to Dismiss on Collateral and Judicial Estoppel Grounds**

Despite the December 2011 amended scheduling order providing that dispositive motions were to be filed no later than July 2, 2012, and National's preclusive sanction on filing further dispositive motions, National nonetheless filed a motion to dismiss FRT on collateral and judicial estoppel grounds.  National made the Court aware of its plan to file the motion on July 26, 2013, three court days before the July 31, 2013, retrial, and filed the motion to dismiss on July 30, 2013.  (Doc. 298.)

In its motion, National asserts that the findings made in the March 6, 2013, order in *Rodriquez* have preclusive effect on FRT in this case.  Based on collateral estoppel, National contends that FRT is precluded from relitigating two issues that were finally decided in *Rodriquez* on March 6, 2013:  (1) that Milton Barbis is the 100% owner of FRT; and (2) as the 100% owner of FRT, Mr. Barbis had a duty to disclose any pending or contingent claims of FRT in the Barbises' bankruptcy case.  National also asks that the Court take judicial notice of Barbises' bankruptcy filings, which failed to disclose FRT's claims against National.  Finally, National urges the Court to judicially estop FRT from pursing its claims in this litigation for the failure to disclose the FRT claims against National during the pendency of the Barbises' bankruptcy.

**D.**    **Plaintiffs' Motion for Sanctions**

As National's motion was filed out of compliance with the scheduling order and only 3 court days prior to the July 31, 2013, retrial, Plaintiffs filed a motion for sanctions.  (Doc. 299.)  Plaintiffs argue that they have incurred expenses and attorney's fees as a result of National's ill-timed motion, and thus have been prejudiced by the trial delay.

Currently pending before the Court in this case is National's motion to dismiss FRT based on collateral and judicial estoppel, and FRT and Zone's motion for sanctions against National for filing a dispositive motion out of time and for delaying the July 31, 2013, retrial.

### III.    DISCUSSION

**A.    National's Motion to Dismiss is DENIED as Untimely**

Pursuant to Rule 16(b), the court must issue a scheduling order that limits the time to join other parties, amend the pleadings, complete discovery, and file motions.  Fed. R. Civ. P. 16(b)(2), (b)(3)(A).  A schedule, once set, may be modified "only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).

It is beyond dispute that National's motion to dismiss FRT on judicial and collateral estoppel grounds is untimely under either the December 2011 amended scheduling order (Doc. 24) or the September 11, 2012, pretrial order (Doc. 127).  National's assertion that there is no order governing the timing of its motion to dismiss is simply incorrect.  (Doc. 305, 5:4 ("there is no order dictating the timing of National Surety's motion to dismiss").  The scheduling order provided a July 2, 2012, deadline for filing dispositive motions, and the pretrial order indicated that the only pre-trial motions remaining to be filed were motions in limine, which were ruled on in October 2012.  Although both parties moved to amend the pretrial order in June 2013, neither sought leave to file a dispositive motion.

Thus, under the December 2011 amended scheduling order, National's ability to present a last-minute dispositive motion to the Court was extremely limited – and with good reason. Scheduling orders "are the heart of case management," *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986), and are intended to alleviate case management problems, *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992), very much like the case management problem now before the Court.  Scheduling orders are "not a frivolous piece of paper, idly entered, which can be cavalierly disregarded without peril."  *Johnson*, 975 F.2d at 610.

Although National's motion to dismiss implicitly requires the Court to adjust the scheduling order, and has already required the continuance of the trial, National has not

established any good cause to do so.  To show good cause, the party seeking amendment must establish that it was diligent in assisting the court in creating a schedule, that noncompliance with a deadline will occur notwithstanding diligent efforts to comply because of the development of matters which could not have reasonably been foreseen or anticipated at the time the schedule was put into place, and that the party was diligent in seeking amendment of the scheduling order once it became apparent that it could not comply with the order.  *See Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999).

National did not acquire a basis to file a motion to dismiss predicated on collateral and judicial estoppel until the March 6, 2013, summary judgment order was issued in *Rodriquez*. Even setting aside that National was precluded from filing any pre-trial dispositive motions as a discovery sanction imposed by Judge McAuliffe on May 31, 2012, any dispositive motion filed by National predicated on the preclusive effect of the March 6, 2013, order in *Rodriquez* would have been untimely in light of the July 2, 2012, dispositive motion deadline.  (Doc. 24.)  Had the motion been filed reasonably soon after the March 6, 2013, order was issued, there may have been good cause to amend the schedule and alter the discovery sanction.

That is not what occurred, however.  National did not raise the issue of the March 6, 2013, summary judgment order and its purported preclusive effect on FRT until July 26, 2013— nearly five months after the order in *Rodriquez* was issued.[11]  Further, because of its eleventh-hour realization of the issue, National was left with no time to properly seek leave to amend the schedule to file the motion or seek relief from the discovery sanction imposed against it.  Thus, the question before the Court is whether there is good cause to amend the scheduling order to permit National's motion (1) nearly <u>five months</u> after the basis for the motion had arisen;

---

[11] National raised the issue of judicial estoppel by requesting an emergency hearing in the late afternoon on Friday, July 26, 2013, not by filing an actual motion.  As a result, there was no motion to strike as untimely at that time, and with the pressing reality of last-minute notification to the panel of jurors summoned to appear, an *immediate* decision with respect to the trial was necessitated.  Under these circumstances, Judge Boone was compelled to vacate the trial and call off the potential jurors summoned to appear on July 31, 2013.  Moreover, as of July 26, 2013, simply disallowing National to file the motion precluded it from attempting to set forth legally sufficient grounds for violating the scheduling order through late filing of the motion itself, set forth good cause to amend the scheduling order, or give the Court an opportunity to review the legal basis for the motion and the reasons for the timing of its filing.

(2) after the case has already been tried once; and (3) where the issue was raised only three court days before the retrial was scheduled.

National asserts that it was justified in bringing the motion on the eve of retrial because it is not a party to the *Rodriquez* case, it had no reason to know what was being decided in that matter, and counsel was focused on the impending trial in its own case at the time the order in *Rodriquez* was issued.  (Doc. 305, 6:2-9.)  Further, National reasons that it gained no tactical advantage by delaying in filing the motion – it, too, was forced to expend resources trying this case against FRT in May.  (Doc. 305, 6:14-16.)  Had it known there were potential grounds to preclude FRT's claims and eliminate FRT as a party, National certainly would have filed such a motion prior to the initial May 2013 trial.  (Doc. 305, 6:16-17.)  Finally, National asserts that it raised the issue as soon as it became aware of the implications of the March 6, 2013, order in *Rodriquez*.  (Doc. 305, 6:18-7:1.)

The Court appreciates the realities of a busy trial practice, and that even the most diligent and conscientious practitioners are not omniscient.  However, National's failure to timely review the March 6, 2013, order in *Rodriquez* is problematic for several reasons.  First, *Rodriquez* was not simply an unrelated case involving FRT, to which National was not a party. National was aware of the issues in *Rodriquez* because it filed a notice of related cases on September 5, 2012, asserting that the cases were so closely linked they should be tried together. (Doc. 117, 2:2-3 ("Having separate trials would result in a duplication of effort").)  Given National's knowledge of the relationship between *Rodriquez* and the present case, National should have been aware that the issue of judicial estoppel of FRT had already been raised in *Rodriquez* and the court in *Rodriquez* had expressly stated it would be willing to entertain the issue again on a more complete record at summary judgment.

Second, because National had filed its own motion to judicially estop FRT and Zone from asserting claims against National in May 2012, it was fully aware of the relevance of any subsequent findings made in *Rodriquez* with respect to Milton Barbis' ownership interest in FRT and Barbis' obligation to report any potential or contingent claims of FRT on his personal bankruptcy petition.  Finally, to the extent that National contends it could not have brought its

motion prior to the issuance of a Rule 54(b) judgment in *Rodriquez*, which was not issued until July 15, 2013, this argument lacks legal foundation. Whether an interlocutory district court order may be given preclusive effect does not hinge on its appealability pursuant to 28 U.S.C. § 1291. *See Luben Industries, Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983) ("To be 'final' for collateral estoppel purposes, a decision need not possess 'finality' in the sense of 28 U.S.C. § 1291. A 'final judgment' for purposes of collateral estoppel can be any prior adjudication of an issue in another action that is determined to be 'sufficiently firm' to be accorded preclusive effect.") (citations omitted). Thus, under federal law, the potentially preclusive effect of the March 6, 2013, order could have been raised once the March 6, 2013, order in *Rodriquez* was issued.

Thus, while the Court is not entirely unsympathetic to National's counsel's reasons for failing to carefully monitor *Rodriquez*, the fact remains that the basis for National's motion should have been known to National by virtue of the fact that National had filed a notice of related cases, and was receiving automatically generated email from the court's electronic filing system apprising all attorneys of record, including National's counsel, of any docket activity in *Rodriquez*. Additionally, the issue of judicial estoppel had already been raised by National itself in this case, and by the defendants in the *Rodriquez* case prior to National's filing of the notice of related cases. Counsel for National does not dispute that they were aware of the existence of the March 6, 2013, order at the time it was issued; rather, they simply did not appreciate the findings made in the order. As such, the record reflects that National was not diligent in discovering the purported import of the March 6, 2013, order. For these reasons, no good cause is shown to amend the schedule and entertain National's motion. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 606-07 (the "good cause" standard focuses on the diligence of the party seeking amendment to the schedule).

Typically, where a party files an untimely motion without setting forth good cause, Fed. R. Civ. P. 16(b)(4), or manifest injustice, Fed. R. Civ. P. 16(e), the appropriate remedy is to strike the motion or deny it as untimely. *See, e.g., U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1104 (9th Cir. 1985) (affirming denial of a motion for summary

judgment where the motion was untimely), *superseded by statute on other grounds, Simpson v. Lear Astronics Corp.*, 77 F.3d 1170 (9th Cir. 1996); *Kizzee v. Walmart, Inc.*, No. CV 10-0802-PHX-DGC, 2011 WL 3566881, at * 1 (D. Ariz. Aug. 15, 2011) (denying the plaintiff's motion for summary judgment as untimely filed under the scheduling order).[12]   For example, although both parties were granted an opportunity to amend the pretrial order, neither party sought to extend the deadlines to file motions in limine, which had previously been filed and ruled upon in October 2012.   Indeed, Zone and FRT filed motions in limine on July 23, 2013, which were stricken as untimely – a remedy urged by National.  (*See* Docs. 279-284, 294.)

In sum, National's motion to dismiss is untimely under the scheduling order, National was not diligent in raising the issue after it reasonably should have been aware of it, and therefore no good cause is shown to amend the schedule to permit consideration of the motion. *Johnson*, 975 F.2d at 609.  For the reasons set forth above, the Court DENIES National's motion to dismiss as untimely under the scheduling order.

On a final note, although National's motion is predicated on judicial estoppel, which is an equitable doctrine meant to protect the integrity of the court system, the bankruptcy system has built-in procedural safeguards to remedy any purported disclosure failures during the course of a bankruptcy proceeding.   As noted recently by the Ninth Circuit, *Ah Quin v. County of Kauai Department of Transportation,* __ F.3d __, slip op., 2013 WL 3814916 (9th Cir. July 24, 2013), the Trustee or the bankruptcy court may choose to reopen the case if either finds there has been deception, even if the case has long been closed.  11 U.S.C. § 350(b); Fed. R. Bankr. P. 5010.  Further, a bankruptcy action may be referred to the United States Attorney's office, if appropriate.  *Id.* (citing 18 U.S.C. § 152).  Thus, while the Court does not reach the merits of National's motion because of its untimeliness, the bankruptcy system is sufficiently equipped to deal with any disclosure failures it may find on the part of Mr. Barbis and the bankruptcy court's powers in this regard serve as an adequate disincentive to other litigants.

---

[12] *See also Ammons v. Bakewell*, Fed. Appx. 389 (9th Cir. 2012) (unpublished memorandum decision) (finding "[t]he district court did not abuse its discretion in striking [a] motion for summary judgment as untimely where it was filed after the deadline.").

1  **B.     Plaintiffs' Motion for Sanctions is GRANTED**

2          As discussed, *supra*, due to National's decision to raise the issue of collateral and judicial

3  estoppel on the eve of trial, the trial was vacated, the jury had to be called off, and the parties'

4  witnesses had to be notified that they need not appear on July 31, 2013, for trial.   Because

5  National was not diligent in seeking to amend the schedule and in filing the motion, National

6  was not substantially justified in violating the scheduling order in raising the issue on the eve of

7  trial.

8          "On motion or on its own, the court may issue any just orders, including those

9  authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney: . . . (C) fails to obey a

10 scheduling or other pretrial order."  Fed. R. Civ. P. 16(f)(1).  Further, "instead of or in addition

11 to any sanction, the court *must* order the party, its attorney, or both to pay the reasonable

12 expenses – including attorney's fees – incurred because of any noncompliance with this rule,

13 unless the noncompliance was substantially justified or other circumstances make an award of

14 expenses unjust."  Fed. R. Civ. P. 16(f)(2).

15         National contends that Plaintiffs, as parties to *Rodriguez*, were fully aware of the

16 ramifications of the March 6, 2013, order yet Plaintiffs never notified the court that they were

17 potentially precluded from proceeding in this action.   Further, Plaintiffs' counsel solicited

18 testimony from Mr. Barbis at the first trial that directly contradicted the March 6, 2013, order

19 that Mr. Barbis was the 100% owner of FRT.  (Doc. 305, 7:5-9:20.)  Thus, National maintains

20 that no sanctions should be awarded as Plaintiffs have unclean hands.

21         National provides no authority for the proposition that FRT or its counsel had a duty to

22 inform the Court that *National* may have grounds to file a motion for defensive collateral

23 estoppel to judicially estop FRT from pursuing its claims.  The March 6, 2013, order had no

24 automatic legal effect on this case, and both judicial and collateral estoppel are equitable

25 doctrines, the application of which is subject to the discretion of the court.  *See New Hampshire*

26 *v. Maine*, 532 U.S. 742, 750 (2001); *United States v. Geophysical Corp. of Alaska*, 732 F.2d

27 693, 697 (9th Cir. 1984) ("Once it is determined that the collateral estoppel bar is available, the

28 actual decision to apply the doctrine is left to the district court's discretion.").  Further, if Mr.

Barbis' statements about his role in FRT are contradictory, or he has omitted any claims in his bankruptcy petition, none of those actions precluded National from reviewing the March 6, 2013, order in *Rodriquez*.

Beyond denial of the motion as untimely, because of the disruption of the trial proceedings due to the untimely motion filed without substantial justification, Plaintiffs are entitled to their reasonable expenses, including reasonable attorneys' fees, pursuant to Rule 16(f).

### a.   Expenses Incurred

Plaintiffs' motion for sanctions seeks attorney's fees incurred for filing the motion for sanctions, and other expenses related to vacating the trial at the last minute.  The Court finds that the following expenses were reasonably incurred as a result of National's untimely motion to dismiss:

1.   John Benjamin, one of Plaintiffs' witnesses, purchased a non-refundable plane ticket from Texas to California for the trial at a cost of $297.80.  (Doc. 300, Tryk Decl., ¶ 7, Exh. A.)

2.   Plaintiffs paid $189.00 for a copy of the Transcript of Proceedings from the July 26, 2013, hearing before Judge Boone.  (Doc. 300, Tryk Decl., ¶ 8.)

3.   Plaintiffs paid $572.40 fee for a 14-day rush on the May 2013 trial transcript in light of the July 31, 2013, trial date for which substitute counsel was preparing.  (Doc. 300, Tryk Decl., ¶ 12.)

Plaintiffs assert that they were required to subpoena 30 witnesses at a fee of $50.00 per witness.  However, National stated at the August 20, 2013, hearing that, to the extent it could make its witnesses available for trial in Plaintiffs' case, Plaintiffs would not be required to re-serve many of these subpoenas.  When the trial is reset in this case, counsel will meet and confer regarding service of trial subpoenas.  To the extent that National agrees to make available its witnesses, Plaintiffs will not need to re-serve those subpoenas.  Therefore, Plaintiffs may supplement their motion for sanctions as to subpoena costs once these cost-mitigation efforts have been undertaken as to service of trial subpoenas.

Plaintiffs also assert that they were required to pay witnesses Brendan Rhames and Ben Rodriquez a $275 fee each to appear because they are law enforcement officers, and that those fees will have to be paid again when the trial is reset.  Plaintiffs, however, offered no authority for the proposition that they will need to pay these fees a second time when the trial is reset.  Once the trial is reset, Plaintiffs may supplement their motion by supplying authority requiring repayment of the fees paid to Rhames and Rodriquez.

As such, the Court awards $1,059.20 in reasonable expenses to Plaintiffs for the above costs.

### b.      Reasonable Attorney's Fees

"When the sanctions award is based upon attorney's fees and related expenses, an essential part of determining reasonableness of the award is inquiring into the reasonableness of the claimed fees."  *In re Yagman*, 796 F.2d 1165, 1184-85 (9th Cir. 1986).  Further, "[t]he measure to be used is not actual expenses and fees but those the court determines to be reasonable." *Id*. (internal quotation marks and citation omitted).

Pursuant to federal law, reasonable attorney's fees are generally based on the traditional "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  *See Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000); *see also Stokes v. Microsemi Corp.*, No. CV 02-1689-PHX-LOA, 2003 WL 22114276, at *2 (D. Ariz. Sept. 10, 2003) (applying the lodestar methodology to Rule 37 sanctions); *Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, No. C 06-03359 JF (RS), 2009 WL 3617786, at *1 (N.D. Cal. Oct. 29, 2009) ("[w]hen, as here, attorneys' fees are being awarded pursuant to the discovery sanctions provisions of Federal Rule of Civil Procedure 37, courts generally use the 'lodestar' approach to calculate the proper fee amounts").

The lodestar method to determine a reasonable fee calculates the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  *Hensley*, 461 U.S. at 433.  The lodestar amount is considered presumptively reasonable, but in rare and exceptional circumstances, a court may enhance or reduce the lodestar figure.  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010).  Nevertheless, "[a] strong presumption exists that the lodestar figure

represents a reasonable fee, and therefore, should only be enhanced or reduced in rare and exceptional cases." *Fischer*, 214 F.3d at 1119 n.4 (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (internal quotation marks omitted)).

### i.      Hours Reasonably Expended

A party seeking attorney's fees bears the burden of proving that the fees and costs associated with the relief requested are reasonably necessary to achieve the results obtained. Time expended on work deemed "excessive, redundant, or otherwise unnecessary" shall not be compensated. *See Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (quoting *Hensley*, 461 U.S. at 433-34), *as amended on denial of reh'g* (1993).

As to the hours reasonably expended in filing the motion for sanctions, Mr. Tryk states that he spent 3 hours researching the motion for sanctions and 4 hours drafting the motion. (Doc. 300, Tryk Decl., ¶ 15.)   Mr. Tryk further anticipated spending an additional 8 hours reviewing Defendant's opposition to the motion, preparing a reply brief, and appearing for the hearing on the motion.  (Doc. 300, Tryk Decl., ¶ 16.)  Mr. Tryk also spent 5 hours contacting his clients and assessing the issues.  (Doc. 300, Tryk Decl., ¶ 14.)

Mr. Smith submitted a declaration indicating that he spent 6 hours researching whether "bringing [a motion to dismiss] was even possible 3 business days before trial," and spent 5 hours assisting Mr. Tryk in contacting witnesses and informing their clients, as well as additional research regarding judicial estoppel. (Doc. 299-1, ¶¶ 6, 9.)

National's violation of the scheduling order is a fairly discrete issue, and the motion seeking sanctions was short and straightforward.  The Court finds that 3 hours is a reasonable amount of time to research this one, discrete issue and draft a short motion with supporting declarations.  National's opposition raised several issues that necessitated a response, and the Court finds that 8 hours is reasonable to review the opposition, draft the reply brief, and appear at the August 20, 2013, hearing.  Mr. Smith's declaration indicates that he and Mr. Tryk spent time contacting witnesses and their clients, and the Court finds that 2 total hours is a reasonable amount of time for both counsel to contact witnesses, especially since most of the witnesses were associated with National.

Mr. Smith's time spent determining whether filing a motion to dismiss was possible appears duplicative of the time spent by Mr. Tryk researching the motion for sanctions. As such, Mr. Smith's time, as he did not draft the motion for sanctions, shall not be awarded as duplicative and therefore unreasonable. *See Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1219 (9th Cir. 2003) ("it is appropriate for a district court to reduce duplicative fees when awarding attorney's fees").

In sum, the Court finds that 11 hours of Mr. Tryk's time was reasonably expended researching and drafting the motion for sanctions, reviewing the opposition, drafting a reply brief, and appearing at the August 20, 2013, hearing, which lasted over an hour. Additionally, 2 total hours for time expended by both Mr. Tryk and Mr. Smith in contacting their clients and witnesses to inform them the trial was vacated is reasonable. Thus, a total of 13 hours was reasonably expended in relation to the untimeliness of National's motion to dismiss, and the trial continuation that it caused.

## ii.     Reasonable Hourly Rate

In assessing whether a requested hourly rate is reasonable, courts consider the experience, skill, and reputation of the attorney requesting fees. *See Webb v. Ada Cnty.*, 285 F.3d 829, 840 & n. 6 (9th Cir. 2002). The reasonable hourly rate should reflect the prevailing market rates in the community. *See id.; see also Gates*, 987 F.2d at 1405 (noting that the rate awarded should reflect "the rates of attorneys practicing in the forum district"). Where a case is pending in the Eastern District of California in the Fresno Division, that division "is the appropriate forum to establish the lodestar hourly rate." *Jadwin v. Cnty. of Kern*, 767 F. Supp. 2d 1069, 1129 (E.D. Cal. 2011). In addition to their own statements in support of their fee request, attorneys are required to submit additional evidence that their rates charged are reasonable. *See Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987).

As to a reasonable hourly rate, Mr. Tryk does not provide any support for his requested $300 hourly rate other than his statement that it represents his usual billing rate and is "reasonable in Fresno for similar work performed by Plaintiff[s'] counsel in bad faith insurance matters." (Doc. 300, Tryk Decl., ¶ 19.) A review of recent awards of attorney's fees in this

district establishes that a reasonable hourly rate in this forum for an attorney with 6 years of experience is $250.  *See J&J Sports Prods., Inc. v. Flores*, 1:10-cv-02087-AWI, 2013 WL 3729577, at * 3 (E.D. Cal. July 12, 2013) (awarding $250 per hour for a 2008 law school graduate).  For example, in *Schultz v. Ichimoto*, 2010 WL 3504781, at *6-7 (E.D. Cal. Sept. 7, 2010), the court awarded attorney fees for defense counsel in the amounts of $305 per hour and $255 per hour for counsel with 31 and 23 years of experience, respectively.  The attorney awarded $305 was a specialist in his field.  *Id.*  In *Beauford v. E. W.H. Group Inc.*, 2009 WL 3162249, at *5 (E.D. Cal. Sept. 29, 2009), experienced counsel requested $425 per hour for specialized services, but was awarded $350 per hour in conformity with reasonably awards in this division of the Eastern District.

Mr. Tryk graduated from law school in 2007 and is thus limited in his experience and submits no evidence regarding his skill, experience, or reputation other than his own declaration.  Based on prior fee awards in relatively similar cases and counsel's limited experience, a reasonable hourly rate is $250.  *See Flores*, 2013 WL 3729577, at *3.

Mr. Smith's declaration likewise does not provide any information regarding his skill, experience, or reputation.  (*See* Doc. 299-1, Smith Decl.)  Mr. Smith states only that his hourly rate for the case is $300, "which is reasonable and customary for other Plaintiff's counsel in the area in this area of practice."  (Doc. 299-1, Smith Decl., ¶ 10.)  Mr. Smith was admitted to the California Bar in 2005.  He presumably has two years more experience than Mr. Tryk.  Based on fee awards in relatively similar cases and counsel's 8 years of experience, the Court concludes that a reasonable hourly rate is $275.

### c.      Conclusion

For the reasons set forth above, reasonable attorneys' fees are awarded as follows:

| Attorneys' Fees | | | |
|---|---|---|---|
| Professional | Hours Expended | Hourly Rate | Total |
| Mr. Tryk | 12 (11 + 1) | $250 | $3,000 |
| Mr. Smith | 1.0 | $275 | $  275 |
| | | **Total** | **$3,275** |

Reasonable expenses total $1,059.20.  Plaintiffs may file a supplemental request as it pertains to reasonable expenses, after the parties have undertaken the mitigation efforts proposed by National with respect to re-service of trial subpoenas.  Further, when the trial is re-set, if Plaintiffs must again pay witness fees to Officers Rhames and Rodriquez, they may supplement their request for sanctions in the amounts of those witness fees with supporting authority.

In sum, the total sanction awarded to Plaintiffs for National's violation of the scheduling order in filing a dispositive motion 3 court days prior to the retrial causing a trial continuance without substantial justification is **$4,334.20.**   This amount shall be submitted to Plaintiffs' counsel within 30 days of this order.

**C.      The Parties Shall File Statements To Show Cause Why the Bankruptcy Trustee Should Not be Joined as a Necessary Party Pursuant to Federal Rule of Civil Procedure 19**

As set forth above, Mr. Barbis has made contradictory statements regarding his ownership/membership interest in FRT.  Based on Mr. Barbis' statements under penalty of perjury that he was the 100% owner of FRT, the March 6, 2013, *Rodriquez* summary judgment order unequivocally determined that Mr. Barbis' is the 100 percent sole owner and member of FRT.

27

Where the sole member of an LLC files for bankruptcy, it effectively assigns the entire membership interest in the LLC to the bankruptcy estate, and the Trustee obtains all the debtor's rights in the LLC, including the right to control the management of the LLC. *In re First Protection, Inc.*, 440 B.R. 821, 830 (9th Cir. BAP 2010)[13]; *see also In re Albright*, 291 B.R. 538 (Bankr. D. Colo. 2003).

The Barbises' bankruptcy petition states that the debtors had only a 25 percent interest in FRT.[14] This disclosure, however, is at odds with statements made by Mr. Barbis under penalty of perjury during the course of the *Red Head* and *Rodriquez* civil litigations.[15] If FRT's sole member is Milton Barbis, which Mr. Barbis has stated on two occasions is the case, the Bankruptcy Trustee was entitled to step into the shoes of Mr. Barbis and obtain 100 percent management control of FRT through the filing of Mr. Barbis' chapter 7 bankruptcy petition. "Property of the estate that is not scheduled or otherwise administered by the time the case is closed remains property of the estate forever." *Cheng v. K & S Diversified Invs., Inc.*, 308 B.R. 448, 461 (9th Cir. BAP 2004) (citing 11 U.S.C. § 554(d)). If management and control, i.e., through the 100 percent ownership interest in FRT, remains with the Bankruptcy Trustee as an unscheduled and un-administered asset of the Barbises' estate, then there is a question whether the Bankruptcy Trustee must be joined to this litigation to direct FRT's claims against National. Fed. R. Civ. P. 19(a).

Accordingly, no later than October 11, 2013, the parties shall each file a statement to show cause why the Bankruptcy Trustee should not be joined to this litigation as a necessary party pursuant to Federal Rule of Civil Procedure 19(a). Moreover, a copy of this order shall be

---

[13]   Like the Arizona LLC Act that governed the formation and operation of the LLC at issue in *In re First Protection, Inc.*, the California Revised Uniform LLC Act also provides that a membership interest and an economic interest in an LLC constitute personal property of the member. Cal. Corp. Code § 17300.

[14] (*In re Milton Barbis*, 1:09-bk-60548, Doc. 1, Schedule B, Line 13.)

[15] (*Red Head*, No. 3:08-cv-5703-EMC, Doc. 23, ¶ 1 (Barbis stated that he was "the 100% owner of Fresno Rock Taco, LLC"); *Rodriquez*, 1:11-cv-00622-SKO, Doc. 55-4, p. 3; Barbis Depo., p. 16:2-14 (Barbis provided deposition testimony that he was "the sole member who owned 100 percent of the company").)

served on the Bankruptcy Trustee, and the Trustee may elect to file an optional response to this order to show cause.

After reviewing the parties' statements, the Court will set a hearing if one is deemed necessary.

## IV.   CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. National's Motion to Dismiss is DENIED as untimely;

2. Plaintiffs' motion for sanctions is GRANTED in the amount of **$4,334.20**;

3. No later than October 11, 2013, the parties are ordered to file a statement showing cause why the Bankruptcy Trustee should not be joined as a necessary party pursuant to Federal Rule of Civil Procedure 19;

4. The Clerk of the Court is DIRECTED to serve a copy of this order on the U.S. Trustee, Office of the U.S. Trustee, United States Courthouse, 2500 Tulare Street, Room 1401, Fresno, California, 93721, attention James E. Salven; and

5. No later than October 18, 2013, the Trustee may elect to file a statement in response to this order to show cause.

IT IS SO ORDERED.

Dated:   **September 16, 2013**                **/s/ Sheila K. Oberto**
                                               UNITED STATES MAGISTRATE JUDGE